IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| GEORGE JOHNSON, | : | No. 62 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 134 CD |
| | : | 2013 dated November 19, 2014 |
| v. | : | affirming the Order of Montgomery |
| | : | County Court of Common Pleas, Civil |
| | : | Division, at No. 2010-34399 dated |
| LANSDALE BOROUGH AND LANSDALE | : | January 3, 2013. |
| BOROUGH CIVIL SERVICE | : | |
| COMMISSION, | : | |
| | : | |
| Appellants | : | ARGUED:  April 5, 2016 |

**OPINION**

**JUSTICE BAER**                                        **DECIDED:  September 28, 2016**

We granted allowance of appeal to determine whether a trial court's standard of review of an adjudication of a municipal civil service commission where no new evidence is presented on appeal is governed by the Borough Code, which has been interpreted as providing for *de novo* review, or by the Local Agency Law, which provides for a limited appellate review under those circumstances.  For the reasons set forth herein, we hold that when the two statutes are read *in pari materia*, it becomes clear that a limited appellate standard of review applies.  Accordingly, we respectfully reverse the order of the Commonwealth Court, which held that *de novo* review was appropriate, and remand the matter for further proceedings consistent with this opinion.

The record establishes that Lansdale Borough Police Officer George Johnson received a subpoena to attend a preliminary hearing on May 18, 2010.  His attendance

at the hearing was critical as he had conducted the field sobriety tests relating to a criminal defendant's charges of driving under the influence of alcohol. Without requesting a continuance or notifying anyone of his inability to attend, Officer Johnson failed to appear at the preliminary hearing, resulting in the dismissal of the criminal charges.

On May 26, 2010, Lansdale Borough Police Chief Robert McDyre met with Officer Johnson to determine why he missed the preliminary hearing. Notably, the meeting was not recorded, and no written statement was made confirming what was said. Present during the inquiry were Sergeant Richard Bubnis and Sergeant Alex Kromdyk. Chief McDyre began by providing the customary written warning, advising Officer Johnson that he was being questioned as a part of an official investigation and that he must answer the questions posed honestly and completely or be subject to disciplinary action. When Chief McDyre asked why he failed to appear at the preliminary hearing, Officer Johnson responded that he had forgotten about the hearing as he had been distracted because his son had been bitten by the neighbor's pitbull on May 13, 2010, five days before the preliminary hearing. Based on his response, Chief McDyre discussed methods to avoid missing hearings in the future. Chief McDyre then questioned Officer Johnson regarding whether he had received prior notice of the May 18th preliminary hearing, to which he responded that he did receive such notice, but mistakenly believed that the hearing was later in the month of May.

As the meeting continued, Chief McDyre asked Officer Johnson whether he could reinstate the criminal charges where he simply forgot to appear for the preliminary hearing.[1] Officer Johnson replied that he was attempting to reinstate the criminal

---

[1] A criminal complaint dismissed at a preliminary hearing may generally be reinstituted as long as the statute of limitations has not expired. Commonwealth v. Thorpe, 701 A.2d 488, 489 (Pa. 1997). The decision to reinstitute charges must be made by the (continued…)

charges by informing both the district court and the assistant district attorney that he had missed the preliminary hearing, not because he forgot that it was scheduled, but rather because he was sick. Specifically, he asserted that he apologized personally to the district court for missing the preliminary hearing and informed the court that he failed to appear because he was sick. Additionally, Officer Johnson provided to Chief McDyre a letter that he had drafted to the assistant district attorney, which had not yet been sent, seeking re-arrest of the criminal defendant and again asserting that he had missed the May 18th preliminary hearing because he "was home sick."[2] Officer Johnson elaborated that he had called off sick on the day prior to the scheduled preliminary hearing due to a sinus infection and that he remained sick on the day of the hearing. Notably, he acknowledged that he was well enough to attend the hearing, had he remembered it.

The tenor of the meeting at that point changed as Chief McDyre viewed Officer Johnson's explanations to the court and the assistant district attorney as being inconsistent with his initial response that he failed to appear at the preliminary hearing

_____

(…continued)
prosecutor. See Pa.R.Crim.P. 544(A) (providing that when charges are dismissed at a preliminary hearing, the attorney for the Commonwealth may reinstate the charges by approving, in writing, the refiling of the complaint with the issuing authority).

[2] Officer Johnson's letter to the assistant district attorney read, in relevant part:

> On Tuesday, May 18, 2010, I did not attend the Preliminary Hearing because he [sic] was home sick. My department was unaware of this because I was on a scheduled day off and I did not notify them of my illness until I returned to work. [District Justice Borek] was not notified by me of the situation until several days later and he had already dismissed the case.

Letter to Deputy District Attorney Christopher Maloney, dated May 26, 2010; Exhibit 9 B-8(L).

because he forgot that it was scheduled. Officer Johnson then asserted that the reasons he had forgotten about the hearing were twofold, *i.e.*, that he had been sick and that he had been distracted by his son's recent injury. Concluding that Officer Johnson was being dishonest in his responses, Chief McDyre placed him on administrative leave.

Following a Loudermill hearing on June 10, 2010, Chief McDyre recommended that the Borough terminate Officer Johnson's employment.[3] Accordingly, the Borough subsequently issued a statement of charges, alleging that Officer Johnson: (1) failed to appear at the May 18, 2010 preliminary hearing, resulting in the dismissal of the criminal charges, thereby constituting his fourth failure to appear in court when subpoenaed to do so; (2) was untruthful during the May 26, 2010 questioning about why he failed to appear at the preliminary hearing after he had been ordered to answer honestly and completely; (3) made a false statement to the court regarding why he failed to appear at the preliminary hearing; and (4) prepared a document to the assistant district attorney in which he stated a false reason for missing the preliminary hearing and sought permission to re-arrest based on the same false grounds, all in violation of Borough police regulations and Borough ordinances. The Borough Council subsequently voted to terminate Officer Johnson's employment.

Officer Johnson thereafter appealed to the Borough Civil Service Commission ("Commission"), which held hearings on the matter on July 19, 2010, July 26, 2010, and August 17, 2010. In addition to establishing that Officer Johnson failed to appear at the May 18th preliminary hearing and had a disciplinary history of three similar infractions, conflicting testimony was presented regarding what transpired during Chief McDyre's

---

[3] See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985) (holding that a public employee is entitled to a hearing consistent with the guarantees of procedural due process before his or her employment is terminated).

May 26, 2010 inquiry. As described supra, Chief McDyre testified that Officer Johnson lied to him during the formal investigation after he was given a direct order to be honest and truthful. Specifically, he asserted, Officer Johnson responded that he missed the preliminary hearing because he forgot about it due to his son's recent dog bite injury, but when asked whether he could re-arrest the criminal defendant under such circumstances, Officer Johnson then asserted that he missed the hearing because he was sick with a sinus infection. Chief McDyre further testified that Officer Johnson repeated his false statement to the court and in a letter drafted to the assistant district attorney. He explained that there were steps that Officer Johnson could have taken if he was sick on the day of the preliminary hearing, including notifying the police department or the judge. When asked on cross-examination whether Officer Johnson could have had more than one reason for failing to appear at the preliminary hearing, Chief McDyre clarified his belief that the officer's sickness was not a second reason for failing to appear but, rather, constituted a different version of the facts that Officer Johnson offered during the questioning when he was confronted with inconsistencies in his account of the events. Finally, Chief McDyre indicated that he would not have recommended termination had it not been for Officer Johnson's untruthfulness. Sergeant Bubnis and Sergeant Kromdyk also testified before the Commission, largely corroborating Chief McDyre's testimony.

To the contrary, Officer Johnson testified that he never lied to Chief McDyre but, rather, explained at the May 26th meeting that he had forgotten to attend the preliminary hearing because he was both sick and distracted due to his son's recent dog bite and resulting injuries. He explained that he did not inform the court or the prosecutor of his son's injuries as he felt that was his personal business. Officer Johnson reiterated that his sickness did not physically prevent him from attending the May 18th preliminary hearing, that he would have attended the hearing had he remembered, and that his

illness was a contributing factor in why he forgot. Officer Johnson further presented the testimony of his physician, establishing that he suffers from chronic sinusitis, that he had been treated for the same on May 24, 2010, and that he could have been suffering from such malady on May 18, 2010, the date of the missed preliminary hearing.

Finally, Officer Justin DiBonaventura, a patrol officer with the Lansdale Police Department, testified that a recorded statement should have been made of the May 26, 2010 meeting between Chief McDyre and Officer Johnson to ensure accuracy regarding what was said. Officer DiBonaventura explained that if he were interviewing a police officer as part of an internal investigation, he would have taken notes during the interview and prepared a formal question and answer statement, which he would have presented to the officer for him to read and sign.

Following the hearing, the parties filed with the Commission proposed findings of fact and conclusions of law with supporting legal memoranda. Upon review of such filings, the Commission denied Officer Johnson's appeal and concluded there was sufficient evidence for three of the four charges, which evidence supported the Borough's decision to terminate his employment. Specifically, the Commission sustained the Borough's first charge, relating to the failure to appear at the May 18th preliminary hearing, as this charge was undisputed.

As to the second charge, alleging that Officer Johnson failed to respond fully and honestly during the May 26, 2010 internal investigation into why he failed to appear at the preliminary hearing, the Commission credited the testimony of Chief McDyre and Sergeant Kromdyk that Officer Johnson provided different and somewhat contradictory reasons why he missed the preliminary hearing. Nevertheless, the Commission held that the Borough failed to provide sufficient evidence that Officer Johnson lied during the May 26th inquiry because it failed to follow accepted investigatory procedures by creating a contemporaneous written record of the questioning, particularly given the

importance of recording the precise chronology and wording of the explanations offered by Officer Johnson.[4]

The Commission sustained the third and fourth charges, alleging that Officer Johnson made false statements to the district court and included a false statement in a document to be given to the assistant district attorney. It asserted that Officer Johnson provided only a single reason to the district court and in his letter to the assistant district attorney, *i.e.*, that he was sick, and did not disclose that he had failed to appear at the May 18th preliminary hearing because he forgot. In concluding that these constituted false statements, the Commission relied on Officer Johnson's testimony that even though he was sick, he was physically able to attend the hearing and would have done so had he not forgotten. Adjudication of the Lansdale Borough Civil Service Commission, Oct. 28, 2010, at 11, ¶ 30 (citing Notes of Testimony, Jul. 26, 2010, at 172; Aug. 17, 2010, at 21-22). The Commission reasoned that by omitting the undisputed fact that he forgot the preliminary hearing, the message conveyed to the district court and the assistant district attorney was that he was physically unable to attend because he was sick, which was untrue.

---

[4] The Commission explained:

> The Commission accepts the testimony of the Borough witnesses to the extent that their testimony demonstrated that Officer Johnson provided a false statement to the District Court and attempted to provide a false document to the Montgomery County District Attorney's office regarding his absence at the preliminary hearing. However, without a better record of the May 26th meeting, the Borough did not convincingly demonstrate that during this meeting Officer Johnson's admitted provision of multiple and contradictory explanations as to the missed May 18th hearing were "lies" or that Officer Johnson did not "fully respond to the questions" he was asked.

Adjudication of the Lansdale Borough Civil Service Commission, Oct. 28, 2010, at 9, ¶ 24.

Accordingly, based on his prior disciplinary history, his failure to appear at the May 18th preliminary hearing, and his false statements to the court and the assistant district attorney, the Commission denied Officer Johnson's appeal from his termination from employment as a Lansdale Borough police officer.

Officer Johnson thereafter appealed the Commission's adjudication to the trial court, which affirmed in part and reversed in part. Initially, it is significant that the trial court did not take additional evidence and relied, instead, upon the record as made by the Commission. Germane to the issue on appeal, the applicable standard of review under these circumstances was not contested before the trial court and was referenced in the trial court's opinion as encompassing the limited review set forth in Section 745(b) of the Local Agency Law, *i.e.,* examining whether the Commission's adjudication violates constitutional rights, is not in accordance with the law, violates the procedural provisions of the Local Agency Law, or the Commission's findings are not supported by substantial evidence. Trial Court Opinion, Apr. 10, 2013, at 2 (citing Moorehead v. Civil Serv. Comm'n of Allegheny Cnty, 769 A.2d 1233, 1237-38 (Pa. Cmwlth. Ct. 2001) (citing Section 745(b) of the Local Agency Law, 2 Pa.C.S. § 754(b))).[5]

After affirming the Commission's ruling that the first charge was supported by sufficient evidence as it was undisputed that Officer Johnson failed to appear at the preliminary hearing, the trial court observed what it believed to be an inconsistency in the Commission's reasoning relating to the remaining three charges. It determined that because the Commission found insufficient evidence to support the second charge

---

[5] Citing the general tenet of appellate court jurisprudence set forth in 42 Pa.C.S. § 706 (providing that "[a]n appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances"), the trial court also opined that a trial court could modify a penalty imposed by a civil service commission so long as it does not abuse its discretion or err as a matter of law. Trial Court Opinion, Apr. 10, 2013, at 2.

(alleging that Officer Johnson was dishonest during the May 26, 2010 meeting with Chief McDye because he gave inconsistent reasons for failing to attend the preliminary hearing), there was likewise insufficient evidence to support the third and fourth charges (alleging that Officer Johnson made false statements to the district court and in a letter to the assistant district attorney, indicating that he failed to attend the hearing because he was home sick).

The trial court reasoned that if Officer Johnson's multiple explanations did not constitute deliberate lies for purposes of the second unsubstantiated charge (dishonesty during internal investigation), those same explanations could not constitute lies under the third and fourth charges.[6] The court opined that the Commission did not reject the evidence establishing that Officer Johnson was, in fact, sick on the day of the preliminary hearing and that the record supported such conclusion. Thus, the court determined, Officer Johnson's statements to the district court and the assistant district attorney, that he failed to appear at the preliminary hearing because he was sick, were truthful. It further held that neither the third nor fourth charges (false statements to the court and assistant district attorney) alleged that Officer Johnson provided incomplete reasons for failing to appear, as the charges only alleged that he presented false reasons.

Accordingly, the trial court affirmed the Commission's rulings on charges one and two; reversed the Commission's rulings on charges three and four for lack of substantial evidence; vacated the Commission's order terminating Officer Johnson; and reinstated

---

[6] The court reached this conclusion without acknowledging that the Commission's finding of insufficient evidence supporting the second charge appeared to be based upon the Borough's failure to create a record of the May 26, 2010 internal investigation meeting, rather than any credibility determination regarding Officer Johnson's explanations for failing to appear at the preliminary hearing. See n.4, supra.

him as an officer with the Lansdale Borough Police Department after a thirty-day suspension for his failure to appear at the preliminary hearing.

In their appeal to the Commonwealth Court, Lansdale Borough and the Lansdale Borough Civil Service Commission (hereinafter collectively referred to as "Borough") contended that the trial court erred in conducting its substantial evidence review by rejecting the Commission's factual findings that were supported by the record and by modifying Officer Johnson's termination to a thirty-day suspension. Notwithstanding that neither the Borough nor Officer Johnson had ever taken the position that the trial court's standard of review regarding the Commission's adjudication was governed by the Borough Code instead of the Local Agency Law, the Commonwealth Court directed the parties to address at oral argument: (1) the reviewing court's standard of review of a borough civil service commission's decision where the court takes no additional evidence; (2) whether Section 1191(c) of the Borough Code confers authority upon a trial court to modify discipline imposed by a borough's civil service commission where the trial court takes no additional evidence and does not otherwise modify the commission's findings of fact or conclusions of law;[7] and (3) whether the trial court erred

---

[7] When Officer Johnson appealed the Commission's adjudication, Section 1191(c) of the Borough Code stated, in relevant part:

> All parties concerned shall have immediate right of appeal to the court of common pleas of the county, and the case shall there be determined as the court deems proper. No order of suspension made by the commission shall be for a longer period than one year. Such appeal shall be taken within sixty days from the date of entry by the commission of its final order and shall be by petition. Upon such appeal being taken and docketed, the court of common pleas shall fix a day for a hearing and shall proceed to hear the appeal on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence. The decision of the court affirming or revising the decision of the commission shall be final, and the employe shall be suspended, discharged, demoted or reinstated in accordance with the order of court.

(continued…)

in reversing the Commission's determination that Officer Johnson made false statements to the district court and assistant district attorney. Commonwealth Court *Per Curiam* Order dated May 5, 2014.

The case was argued on June 18, 2014, and the parties addressed the questions as directed. The Commonwealth Court thereafter affirmed the trial court's modification of Officer Johnson's termination in an *en banc* decision. Johnson v. Lansdale Borough, 105 A.3d 807 (Pa. Cmwlth. 2014). In determining the trial court's standard of review in an appeal from an adjudication of a borough civil service commission, the Commonwealth Court relied upon Section 1191(c) of the Borough Code, particularly the language providing that "[a]ll parties concerned shall have an immediate right of appeal to the court of common pleas of the county, and the case shall there be determined as the court deems proper." 53 P.S. § 46191 (repealed and restated at 8 Pa.C.S. § 1191(c)).

The court interpreted the language "the case shall there be determined as the court deems proper" as setting forth the trial court's standard of review, irrespective of whether the trial court accepted additional evidence on appeal from the borough civil service commission's adjudication. It relied on this Court's decision in Lower Merion Township v. Turkelson, 152 A.2d 724 (Pa. 1959), which interpreted the identical "as the court deems proper" language in a different statute, the First Class Township Code, as

_____

(…continued)

53 P.S. § 46191 (repealed and restated at 8 Pa.C.S. § 1191(c)). In 2012, the General Assembly amended the statute in various ways unrelated to disposition of this appeal, but retained the "as the court deems proper" language at issue herein. Further, 53 P.S. § 46191 was repealed by the Act of April 18, 2014, 2014, P.L. 432, which amended Title 8 of the Pennsylvania Consolidated Statutes to consolidate multiple sections of the Borough Code. Former Section 1191(c) is now codified at 8 Pa.C.S. § 1191(c). We clarify that our analysis would be the same under all versions of Section 1191(c).

affording the trial court "full discretion to affirm, reverse or modify the action of the [commission]." Johnson, 105 A.2d at 815 (quoting Turkelson, 152 A.2d at 726).

The Commonwealth Court in the instant case observed that subsequent decisions of that court construed this Court's Turkelson decision as affording trial courts broad discretion to revisit the discipline imposed by a civil service commission under the Borough Code. See Reichenbach v. Civil Serv. Comm'n of the Borough of Wilkinsburg, 417 A.2d 1292, 1294 (Pa. Cmwlth. 1980) (relying on Turkelson in holding that because Section 1191(c) of the Borough Code directs a trial court to review an adjudication of a borough civil service commission "as the court deems proper," the trial court's review is broad, and it may revise the Commission's penalty as long as the court does not abuse its discretion in doing so); see also Appeal of Redo, 401 A.2d 394, 398 (Pa. Cmwlth. 1979) (suggesting that pursuant to Turkelson the language "as the court deems proper" vests the trial court with discretion to make its own order concerning the penalty imposed upon the officer, which decision is reviewed by the Commonwealth Court for an abuse of discretion).

Based on these decisions, the Commonwealth Court below held that "a trial court has broad discretion to modify a police officer's discipline in any appeal of a civil service commission decision." Johnson, 105 A.3d 807 at 816. The Commonwealth Court categorized this standard as *de novo* review, allowing the trial court to make independent fact-finding, even where no new evidence was presented to the trial court on appeal. Id. at 816-17 (citing In re Appeal of Blystone, 600 A.2d 672 (Pa. Cmwlth. 1991) (holding that under the Borough Code, a trial court shall determine an appeal of a decision of a borough civil service commission as the court "deems proper" and, thus, has the authority to conduct a more expansive *de novo* review)).

Having determined that the Borough Code affords the trial court *de novo* review of the Commission's adjudication, the Commonwealth Court concluded that the trial

court acted within its statutory authority when it rejected the Commission's conclusions on charges three and four (false statements to court and assistant district attorney). It cited the trial court's finding that Officer Johnson was, in fact, sick on the day that he failed to appear at the preliminary hearing and that the charges alleging false statements did not claim that he provided incomplete reasons for his absence, only false ones. Johnson, 105 A.3d at 817. The Commonwealth Court agreed with the trial court that the Borough's evidence proved, at most, that Officer Johnson made an incomplete statement to the court and the assistant district attorney, but not an untruthful statement. Id. at 817-18. Accordingly, the court held that the trial court's modification of Officer Johnson's discipline from termination to a thirty-day suspension was a proper component of *de novo* review.

Judge Covey dissented and opined that the majority's holding that the trial court had *de novo* review of the Commission's adjudication is contrary to a wealth of case law establishing that where no new evidence is presented to the trial court and the court relied upon the complete record of the proceedings before the municipal civil service commission, the trial court's standard of review is limited to the deferential review set forth in Section 754(b) of the Local Agency Law.[8] See Day v. Civil Serv. Comm'n of the

---

[8] Section 754(b) provides:

> In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

(continued…)

Borough of Carlisle, 931 A.2d 646, 650 (Pa. 2007) (holding that where the trial court took no new evidence and relied upon the record as made before the civil service commission, appellate review of a municipal civil service commission's adjudication is limited to determining whether constitutional rights have been violated, an error of law has been committed, or findings of fact necessary to support the adjudication are supported by substantial evidence); Tegzes v. Bristol Twp. Civil Serv. Comm'n of Philadelphia, 472 A.2d 1386, 1387 (Pa. 1984) (holding that pursuant to Section 754(b) of the Local Agency Law, where a full and complete record is made before a municipal civil service commission, a reviewing court must affirm unless the adjudication violates constitutional rights, is not in accordance with the law, the procedural provisions of the local agency law are violated, or the findings of fact are not supported by substantial evidence); Keslosky v. Old Forge Borough Civil Serv. Comm'n, 73 A.3d 665, 670 n.5 (Pa. Cmwlth. 2013) (same).[9]

The dissent found no error of law in the Commission's determinations and opined that substantial evidence supported its factual findings that Officer Johnson made false statements to the court and in the letter drafted to the assistant district attorney. The dissent emphasized that the false statement for which Officer Johnson was disciplined was not the assertion that he was sick on the day of the preliminary hearing, which was largely uncontested, but rather that Officer Johnson's sickness prevented him from appearing at the preliminary hearing, as he admitted that he could have attended while sick, but simply forgot that the hearing was taking place that day. Id. at 823.

(…continued)

2 Pa.C.S. § 754.

[9] The Commonwealth Court majority discounted the precedential value of the Local Agency Law decisions relied upon by the dissent, contending that the standard of review was not a contested issue in those cases. Johnson, 105 A.3d at 821 n.4.

Concluding that the record supported the Commission's finding that Officer Johnson failed to appear at the hearing because he forgot, and not because he was sick, the dissent agreed with the Commission that his statements to the court and assistant district attorney were falsehoods, intended to suggest misleadingly that he had a legitimate reason for his absence, purportedly so that he could reinstitute the criminal charges that had been dismissed due to his failure to appear. Id.

The dissent further explained that the Commission did not make inconsistent findings regarding charge two (dishonesty during internal investigation) and charges three and four (false statements to court and in letter to the assistant district attorney) as the Commission's rejection of charge two was based on the lack of a contemporaneous record of the May 26th meeting between Officer Johnson and Chief McDyre and not because the Commonwealth believed Officer Johnson and discredited Chief McDyre. Indeed, the Commission specifically credited Chief McDyre's testimony over that of Officer Johnson. See n.4, supra. Accordingly, the dissent concluded that the trial court, without taking any additional evidence, erred by ignoring the Commission's factual findings that were supported by the record regarding whether the underlying conduct of making false statements occurred. It further posited that the trial court erred by modifying the Commission's penalty based on its independent view of the facts.

This Court granted the petition for allowance of appeal filed by the Borough to determine whether the Commonwealth Court erred by holding that the trial court's standard of review of a municipal civil service commission's adjudication is *de novo* where the trial court takes no additional evidence on appeal and limits itself to the record before the Commission. Related thereto, we granted allowance of appeal to determine whether the Commonwealth Court erred by holding that a penalty imposed

by a municipality could be modified absent evidence that the penalty was arbitrary, capricious, or discriminatory.[10]

Preliminarily, the Borough contends, the Commonwealth Court erred by *sua sponte* raising the issue regarding the appropriate standard by which a trial court reviews an adjudication of a municipal civil service commission. According to the Borough, both parties agreed in the proceedings before the trial court that the standard of review was governed by Section 754(b) of the Local Agency Law and was limited in nature. It asserts that no party advocated in favor of applying a *de novo* standard of review in accordance with the Borough Code and emphasizes the trial court's reference to the Local Agency Law's limited deferential standard of review in its opinion. See Trial Court Opinion, Apr. 10, 2013, at 2.[11]

Regarding the merits of the proper standard for a trial court to apply in reviewing an adjudication of a municipal civil service commission, the Borough contends that the plain language of Section 754(b) of the Local Agency Law governs here, where a full and complete record was made before the Commission and no new evidence was presented to the trial court on appeal. The Borough posits that this limited standard of review is well-established and has been set forth in no less than three decisions issued by this Court and in numerous decisions of the Commonwealth Court over the last three decades. See e.g. Day v. Carlisle Borough Civil Serv. Comm'n, 931 A.2d 646, 650 (Pa.

---

[10] This Court denied allocatur on the issue of whether the Commonwealth Court committed reversible error by affirming the trial court's disregard of factual findings made by the Commission, which were supported by substantial evidence of record.

[11] The Borough submits that while the trial court cited the correct standard of review, *i.e.,* limited review under Section 754(b) of the Local Agency Law, it erred in its application of that standard when it reweighed the evidence and erroneously substituted its judgment for that of the Commission. As noted, this Court denied allocatur on the issue of whether the trial court disregarded the Commission's factual findings, which were supported by evidence of record.

2007) (acknowledging that where the trial court took no new evidence and relied upon the record as made before the civil service commission, appellate review of a municipal civil service commission's adjudication is limited to determining whether constitutional rights have been violated, an error of law has been committed, or findings of fact necessary to support the adjudication are supported by substantial evidence); Lewis v. Phila. Civil Serv. Comm'n, 542 A.2d 519, 522 (Pa. 1988) (same); Tegzes v. Bristol Twp., 472 A.2d 1386, 1387 (Pa. 1984) (same); Keslosky v. Old Forge Civil Serv. Comm'n, 73 A.3d 665, 670 n.5 (Pa. Cmwlth. 2013) (same); Veit v. North Wales Borough, 800 A.2d 391, 397 (Pa. Cmwlth. 2002) (same).   Were we to hold to the contrary and adopt a *de novo* standard for the trial court's review, the Borough contends, the proceedings before the civil service commission would be rendered meaningless.

The Borough further asserts that the Commonwealth Court ignored this wealth of precedent, which is consistent with the express language of Section 754(b) of the Local Agency Law, and erroneously relied upon Section 1191(c) of the Borough Code and older cases interpreting the "as the court deems proper" language included in that provision, particularly this Court's decision in Turkelson.  This reliance is misplaced, the Borough argues, because when Turkelson was decided, the Local Agency Law was inapplicable to appeals from an agency decision to a court of record, but in 1978, the General Assembly broadened its scope to include such appeals.[12]  Thus, the Borough

---

[12] The Borough observes that former Section 10 of the Local Agency Law, applicable prior to 1978, provided that the Local Agency Law did not apply "to any adjudication which under any existing act may be appealed to a court of record." 53 P.S. § 11310 (repealed). In 1978, the General Assembly repealed Section 10 and replaced it with Section 751(b) of the Local Agency Law which, as discussed infra, reversed the prior sentiment and states that "[t]he provisions of this subchapter shall apply to any adjudication which under any existing statute may be appealed to a court of record, but only to the extent not inconsistent with such statute."  2 Pa.C.S. § 751(b).

contends, Turkelson and its progeny no longer have application to appeals from municipal civil service commission adjudications.

In a related issue, the Borough maintains that the Commonwealth Court's holding that a trial court has *de novo* review in all appeals from a municipal civil service commission adjudication is inconsistent with well-established case law holding that a civil service commission can only modify a penalty imposed by a municipality if there is evidence that the penalty is arbitrary, capricious, or discriminatory. See Brief for Appellant at 51 (citing York Township Board of Commissioners v. Batty, 694 A.2d 395, 397 (Pa. Cmwlth. 1997) (holding that the civil service commission, in reviewing disciplinary actions against civil servants, must determine "whether the penalty imposed is not otherwise prohibited, and whether the selection of the penalty is not arbitrary, discriminatory or an abuse of discretion"); Herrmann v. Civil Serv. Comm'n of the Borough of Jenkintown, 478 A.2d 961, 963 (Pa. Cmwlth. 1984) (holding that "[w]here the charges brought by the borough are found by the commission to be supported by the evidence, the penalty imposed is not otherwise prohibited, and the selection of the penalty is not arbitrary, discriminatory or an abuse of discretion, the commission may not modify the council's penalty"); McNaughton v. Civil Serv. Comm'n of the Borough of Camp Hill, 650 A.2d 1157, 1160 (Pa. Cmwlth. 1994) (same)).

The Borough maintains that these holdings, relating to a civil service commission's standard of review, are based upon this Court's recognition in Appeal of Baker, 185 A.2d 521, 523 (Pa. 1962), that due respect and weight must be afforded to the action of the municipal body that is authorized to discipline its police officers, and the function of the reviewing entity is only to ensure that just cause for the discipline exists both factually and legally.[13] The Borough concludes that the Commonwealth

---

[13] The Baker decision was based upon the Civil Service Act, and not the Borough Code or Local Agency Law at issue here.

Court's holding that trial courts have *de novo* review in all appeals from municipal civil service commission adjudications not only renders meaningless the proceedings before the civil service commission, as alleged above, but also repudiates the deference afforded to local officials to determine, in the first instance, the appropriate discipline for their police officers. Accordingly, the Borough requests that we reverse the Commonwealth Court's order and remand the matter for further proceedings consistent with our opinion.

In response, Officer Johnson contends that the Commonwealth Court did not err by examining the trial court's standard of review. He emphasizes that the Commonwealth Court had advocacy on the particular issue as that court directed the parties to address it, and the Borough complied without objection. Officer Johnson explains that when the Commonwealth Court directed him to address the applicable review standard, he discovered the Turkelson line of cases, which described the standard as broader and more akin to *de novo* review. He concludes that the Commonwealth Court acted within its authority in affirming the trial court's modification of discipline imposed by the Commission on this alternative ground. See Brief for Appellee at 14 (citing Friends of Pennsylvania Leadership Charter School v. Chester County Board of Assessment Appeals, 101 A.3d 66, 75 (Pa. 2014) (holding that an appellate court may affirm for any valid reasons of record)).

Regarding the merits of the controversy surrounding the proper standard of review, Officer Johnson maintains that the General Assembly did not make uniform the standards under which trial courts review adjudications of civil service commissions. He argues that when the subject of discipline is employed by a borough, the standard set forth in Section 1191(c) of the Borough Code governs and the deferential standard of review espoused in Section 754(b) of the Local Agency Law has no application. Officer Johnson relies on Turkelson, which, as noted, interpreted the "as the court deems

proper" language in the First Class Township Code as affording the trial court full discretion to affirm, reverse, or modify the decision of the civil service commission, thereby signifying a broad, rather than narrow and deferential standard of review.

Officer Johnson further disputes the Borough's contention that the 1978 amendment to the Local Agency Law renders the Borough Code's standard of review inapplicable to municipal civil service appeals. While the 1978 adoption of Section 751(b) directed for the first time that Local Agency Law provisions were applicable to adjudications appealed to a court of record, Section 751(b) limited application of the Local Agency Law "to the extent not inconsistent with" the statute that authorized the appeal of the adjudication. See 2 Pa.C.S. § 751(b) (providing that "[t]he provisions of this subchapter shall apply to any adjudication which under any existing statute may be appealed to a court of record, but only to the extent not inconsistent with such statute"). Thus, Officer Johnson suggests, even after 1978, the Local Agency Law remains inapplicable where there is a conflict between it and the statute authorizing the appeal, here, the Borough Code. This is evident, Officer Johnson asserts, as the Commonwealth Court continued to apply the Borough Code's "as the court deems proper" language, providing for *de novo* review, after 1978. See Reichenbach v. Civil Ser. Comm'n of Wilkinsburg, 417 A.2d 1292, 1294 (Pa. Cmwlth. 1980) (holding that Section 1191(c) of the Borough Code gives the trial court full discretion to modify penalties with a broad scope of review, subject to Commonwealth Court review only for abuse of that discretion).

Regarding the Borough's reliance on case law holding that a civil service commission cannot modify a municipality's penalty absent evidence that it is arbitrary, capricious, or discriminatory, Officer Johnson merely reiterates his position that Turkelson and its progeny govern the trial court's standard of review and provide for *de novo* review of the Commission's adjudication pursuant to Section 1191(c) of the

Borough Code. Accordingly, Officer Johnson requests that we affirm the Commonwealth Court's decision, which held that a trial court reviews an adjudication of a borough civil service commission *de novo*, thereby authorizing the trial court to reduce his penalty from termination to a thirty-day suspension based upon the trial court's reversal of charges three and four, which the Commission had sustained.

We begin by addressing the Borough's contention that the Commonwealth Court erred by *sua sponte* examining the proper standard by which a trial court reviews a municipal civil service commission's adjudication. It is well-established that where the parties in a case fail to preserve an issue for appeal, an appellate court may not address that issue *sua sponte*. Steiner v. Markel, 968 A.2d 1253, 1257 (Pa. 2009). Appellate courts consider only the controversies preserved by the litigants because *sua sponte* consideration of issues disturbs the process of orderly judicial decision-making by depriving the court of the benefit of counsel's advocacy, Danville Area Sch. Dist. v. Danville Area Educ. Ass'n, 754 A.2d 1255, 1259 (Pa. 2000), and depriving the litigants the opportunity to brief and argue the issues. Wiegand v. Wiegand, 337 A.2d 256, 257 (Pa. 1975).

These serious concerns that arise from an appellate court's *sua sponte* consideration of an issue are not implicated here. When the Commonwealth Court identified what it purportedly believed to be a threshold issue in deciding the Borough's appeal, it directed the parties to address the proper standard by which a trial court reviews an adjudication of a municipal civil service commission, and the parties complied without objection. Thus, the litigants had an opportunity to address the distinct, albeit significantly-related issue of whether the Borough Code governed the trial court's standard of review, and the Commonwealth Court rendered its decision upon consideration of the advocacy presented. We caution, however, that courts may not inject new theories into appellate proceedings by merely directing the parties to brief a

particular issue. We condone the Commonwealth Court's actions in the instant case because the inquiry posed by the court was directly related to disposition of the appeal before it as the inquiry involved the propriety of the standard of review applied by the trial court. Accordingly, we do not believe the Commonwealth Court's actions preclude us from addressing the issue in this appeal.

We now turn to the dispositive inquiry of whether a trial court's standard of review of an adjudication of a municipal civil service commission where no new evidence is presented on appeal is governed by the Borough Code, which has been interpreted as providing for *de novo* review, or by the Local Agency Law, which provides for a limited appellate review under those circumstances. Because this issue requires us to interpret the two relevant statutes, it constitutes a question of law over which our standard of review is *de novo*, and our scope of review is plenary. A.S. v. I.S., 130 A.3d 763, 768 (Pa. 2015).

While the parties and the lower courts have placed much emphasis on the cases that interpret the Borough Code and the Local Agency Law, we will first examine the statutes themselves. When interpreting a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Id. § 1921(b). Additionally, we construe every statute "if possible, to give effect to all its provisions." Id. § 1921(a); see also id. § 1922(2) (stating that "the General Assembly intends the entire statute to be effective and certain").

Upon examination of the Local Agency Law, it is clear that its express terms dictate when it applies. Section 751(a) sets forth the general rule that Subchapter B of the Local Agency Law, entitled "Judicial Review of Local Agency Action," shall apply to all local agencies, regardless of whether a statute provides for an appeal from an

agency's adjudication. 2 Pa.C.S. § 751(a). An exception to this general rule is found in Section 751(b), which states that "[t]he provisions of this subchapter shall apply to an adjudication which under any existing statute may be appealed to a court of record, but only to the extent not inconsistent with such statute." Id. § 751(b).[14]

These provisions, enacted in 1978, directed for the first time that all local agency adjudications were appealable to a court of record, but contemporaneously provided that to the extent a preexisting statute already governed the judicial review of a particular adjudication, the preexisting statute, rather than the Local Agency Law, would govern. Here, Section 1191(c) of the Borough Code authorized the appeal of the Commission's adjudication by affording all parties an immediate right of appeal to the court of common pleas. Thus, facially, the Borough Code is the preexisting statute that would control this appeal, and, under the Commonwealth Court's jurisprudence based on Turkelson, would result in broad trial court review. This does not end our analysis, however, as we are unconvinced that there is an inconsistency between the Local Agency Law and the Borough Code regarding judicial review of a municipal civil service commission adjudication, and, accordingly, that the application of the Borough Code results in affording trial courts *de novo* review of local agency adjudications.

We first examine Section 754 of the Local Agency Law, entitled "Disposition of appeal," which, as noted, states:

---

[14] The parties do not contest that Lansdale Borough constitutes a "local agency," which is statutorily defined as "[a] government agency other than a Commonwealth agency." Id. § 101. A "government agency" is, in turn, defined as including, *inter alia*, "[a]ny political subdivision or municipal or other local authority." Id. Additionally, the parties do not appear to dispute that the Commission's ruling constitutes an "adjudication," which is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." Id.

**(a) Incomplete record.** -- In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

**(b) Complete record.** -- In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 754.

A plain reading of this statute provides that the trial court's standard of review under the Local Agency Law varies, depending upon on the state of the record as it exists on appeal to the that court. See In re Appeal of Nevling, 907 A.2d 672, 674 (Pa. Cmwlth. 2006) (holding that "[w]hen considering an appeal from a local agency, a court's standard of review is determined by the condition of the record created before that local agency"). The statute directs that if a full record was not made before the local agency, the trial court may either remand the matter to the agency for further fact-finding or hear the matter *de novo*. If, however, the trial court hears the appeal on the complete record of the proceedings before the local agency, the trial court's standard of review is limited to determining whether there was a constitutional violation, an error of law, a failure by the local agency to comply with the statute's procedural provisions, or a material finding of fact that is unsupported by substantial evidence.

We next compare Section 754(b) of the Local Agency Law to Section 1191(c) of the Borough Code, which stated, in relevant part:

> All parties concerned shall have immediate right of appeal to the court of common pleas of the county, and the case shall there be determined as the court deems proper. No order of suspension made by the commission shall be for a longer period than one year. Such appeal shall be taken within sixty days from the date of entry by the commission of its final order and shall be by petition. Upon such appeal being taken and docketed, the court of common pleas shall fix a day for a hearing and shall proceed to hear the appeal on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence. The decision of the court affirming or revising the decision of the commission shall be final, and the employe shall be suspended, discharged, demoted or reinstated in accordance with the order of court.

53 P.S. § 46191 (repealed and restated at 8 Pa.C.S. § 1191(c)). See n.7, supra.

Contrary to the Commonwealth Court's decision below and the cases upon which it relies, we find no material inconsistency between the two statutes at issue concerning the standard of review to be employed when trial courts review local agency adjudications, and conclude, instead, that the provisions of the Local Agency Law and the Borough Code in this regard can be read in pari materia. See 1 Pa.C.S. § 1932 (providing that statutes in pari materia shall be viewed together as one statute). In doing so, we emphasize that when interpreting a statute we must listen attentively to what the statute says, but also to what it does not say. Commonwealth v. Johnson, 26 A.3d 1078, 1090 (Pa. 2011) (quoting Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co., 788 A.2d 955, 962 (Pa. 2001) (stating that "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say"). Notably, Section 1191(c) neither directs nor implies a true de novo review as it does not require the trial court to engage in an independent review of the facts and conclusions of law as set forth by the civil service commission. See West Chester Area School District v. Collegium Charter School, 812 A.2d 1172, 1179 n.9 (Pa. 2002) (holding that the sine qua non of de novo review is that

the reviewing body possess and exercise the authority to arrive at an independent judgment on the matter in dispute).

Rather, when read in its entirety, Section 1191(c) provides that the case shall be determined on appeal "as the court deems proper" and proceeds to explain, similar to the Local Agency Law, that the trial court shall "hear the appeal on the original record and additional proof or testimony as the parties concerned may desire to offer in evidence." 53 P.S. § 46191 (repealed and restated at 8 Pa.C.S. § 1191(c)). Thus, the trial court can determine the case as it "deems proper," depending upon the state of the record before it. Section 1191(c) further prohibits a suspension exceeding one year, provides the appeal period, and directs that the decision of the court shall be final.[15] None of these directives conflict with the specific appellate review procedure set forth in Section 754 of the Local Agency Law, which allows for *de novo* review where there is an incomplete record on appeal and for limited, deferential review where the trial court proceeds on the record as made before the civil service commission. Accordingly, interpreting Section 1191(c) of the Borough Code on a blank slate, we cannot conclude that the "as the court deems proper" language constitutes a particular standard of appellate review requiring the trial court to exercise judgment completely independent from the findings of fact and conclusions of law rendered by the civil service commission. In fact, we find that the "as the court deems proper" language does not set forth an established appellate standard of review at all. Instead, we reiterate that within the context of this case, the "as the court deems proper" language directs the trial court to determine whether *de novo* or narrow review shall apply, depending upon the state of the record before it.

---

[15] Although irrelevant to disposition of this appeal, we note that the 2012 legislative amendment to Section 1191(c) modified the appeal period from sixty to thirty days, which section now appears at 8 Pa.C.S. § 1191(c).

We acknowledge that while our interpretation makes logical sense when Section 1191(c) of the Borough Code is read *in pari materia* with Section 754 of the Local Agency Law, the latter provision did not exist in 1959 when this Court decided Turkelson, upon which Officer Johnson and the Commonwealth Court rely in the instant case. In Turkelson, the civil service commission terminated the employment of Officer Turkelson of the Lower Merion Township Police Department after finding him guilty of the corrupt practice of accepting fifty dollars from a constituent when he knew he had no right to keep the funds. The commission based its penalty on a local code of discipline, which governed police officer conduct and directed immediate removal of any officer who failed to account for money received by him. On appeal from the commission's adjudication, the trial court found the punishment imposed to be too severe for the circumstances. Accordingly, the trial court reinstated Officer Turkelson and suspended him without pay for approximately three months.

On direct appeal to this Court, we affirmed the trial court's modification of penalty. In doing so, we examined the First Class Township Code, which contained language nearly identical to that appearing in the Borough Code at issue herein, providing that the person suspended or removed had an immediate right to appeal to the trial court and "the case shall there be determined as the court deems proper." After citing the aforementioned statutory language, and without further elaboration, this Court stated, [t]he statute clearly gives the Court of Common Pleas full discretion to affirm, reverse or modify the action of the Civil Service Commission." Turkelson, 152 A.2d at 726.

While Turkelson did not employ the term "*de novo*" or engage in a meaningful statutory construction analysis, that decision was thereafter interpreted as holding that the "as the court deems proper" language affords trial courts broad authority to modify a penalty imposed by a civil service commission. See e.g. Reichenbach v. Civil Serv.

Comm'n of the Borough of Wilkinsburg, 417 A.2d 1292, 1294 (Pa. Cmwlth. 1980) (relying on Turkelson in holding that because Section 1191(c) of the Borough Code directs a trial court to review an adjudication of a borough civil service commission "as the court deems proper," the trial court's review is broad, and it may revise the Commission's penalty as long as the court does not abuse its discretion in doing so); Appeal of Redo, 401 A.2d 394, 398 (Pa. Cmwlth. 1979) (suggesting that pursuant to Turkelson, the language "as the court deems proper" vests the trial court with discretion to make its own order concerning the penalty imposed upon the officer, which decision is reviewed by the Commonwealth Court for an abuse of discretion); Appeal of Fuller, 358 A.2d 756, 758 (Pa. Cmwlth. 1976) (holding that pursuant to Turkelson, the "as the court deems proper" language "empowers a court of common pleas to modify a penalty imposed by a borough civil service commission, as long as the court itself does not thereby commit an abuse of discretion").

Notably, these cases are in contrast to the approach taken in numerous recent cases that have applied the limited standard of appellate review as set forth in Section 754(b) of the Local Agency Law. See e.g. Day v. Carlisle Borough Civil Serv. Comm'n, 931 A.2d 646, 650 (Pa. 2007) (acknowledging that where the trial court took no new evidence and relied upon the record as made before the civil service commission, appellate review of a municipal civil service commission's adjudication is limited to determining whether constitutional rights have been violated, an error of law has been committed, or findings of fact necessary to support the adjudication are supported by substantial evidence); Lewis v. Phila. Civil Serv. Comm'n, 542 A.2d 519, 522 (Pa. 1988) (same); Tegzes v. Bristol Twp., 472 A.2d 1386, 1387 (Pa. 1984) (same); Keslosky v. Old Forge Civil Serv. Comm'n, 73 A.3d 665, 670 n.5 (Pa. Cmwlth. 2013) (same); Veit v. North Wales Borough, 800 A.2d 391, 397 (Pa. Cmwlth. 2002) (same).

Considering our comparative analysis of the statutory language of Section 1191(c) of the Borough Code and Section 754 of the Local Agency Law, the 1978 legislative expression expanding the scope of application of the Local Agency Law, and the seemingly contradictory lines of cases discussed above, we now adopt the deferential standard of appellate review set forth in Section 754(b) of the Local Agency Law under circumstances where the trial court accepted no new evidence on appeal. Implicitly, this requires us to disapprove the Turkelson line of cases to the extent it provided for a broad *de novo* review by the trial court in appeals where no new evidence was presented. This decision will both permit local agencies to manage their employees without fear that a trial court may "second-guess" their every prerogative and will breathe vitality into civil service commissions, which otherwise would appear to constitute nothing more than an unnecessary stop between a local agency decision and trial court review.

Little additional discussion is necessary to dispense with the Borough's second and related issue. In the Borough's view, the Commonwealth Court's holding that a trial court has *de novo* review in all municipal civil service commission appeals conflicts with well-established case law precluding a civil service commission from modifying a penalty imposed by a municipality, absent evidence that the penalty is arbitrary, capricious, or discriminatory. As we have resolved that a trial court's review of a municipal civil service commission adjudication, where no new evidence is accepted on appeal, is in conformity with the narrow contours of Section 754(b) of the Local Agency Law, any case law relating to the civil service commission's standard of review remains undisturbed.

Accordingly, as the Commonwealth Court's holding in this case was premised upon the mistaken belief that the trial court's standard of reviewing the Commission's adjudication was *de novo*, we respectfully vacate the order of the Commonwealth Court

and remand to that court for it to reconsider the trial court's decision in light of this opinion.[16]

Chief Justice Saylor and Justices Todd, Donohue, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a concurring opinion.

---

[16] We reiterate that this Court denied allocatur on the issue of whether the Commonwealth Court committed reversible error by affirming the trial court's disregard of factual findings made by the Commission, which were supported by substantial evidence of record. Thus, this issue is beyond the scope of this appeal.