# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Andrew Fullman, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 650 C.D. 2022 |
| | : | |
| Bureau of Administrative | : | |
| Adjudication | : | |
| | : | Submitted: August 8, 2025 |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE MATTHEW S. WOLF, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                                          FILED:  April 23, 2026

Andrew Fullman, an unrepresented litigant, appeals to this Court from the June 21, 2022 order of the Court of Common Pleas of Philadelphia County (trial court) denying Mr. Fullman's appeal from a decision by the Philadelphia Bureau of Administrative Adjudication (Bureau) to uphold two traffic citations (Citations). Because Mr. Fullman fails to meet his burden of proof under Section 754(b) of the Local Agency Law,[1] we affirm the trial court.

---

[1] Section 754(b) provides that, after a proper hearing of the appeal, a trial court shall affirm a local agency's adjudication unless it finds

> that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the

**(Footnote continued on next page…)**

## I.  Background

On Tuesday, April 13, 2021, at 5:29 p.m., an officer of the Philadelphia Parking Authority (PPA) issued Mr. Fullman a citation (Citation 1) for stopping for approximately one hour in a no-stopping zone, in violation of Section 12-903(c) of the Philadelphia Traffic Code (Traffic Code),[2] on the 100 block of South 15th Street. Original Record (O.R.) at 17-18.[3]  Attached to Citation 1 was a photograph of Mr. Fullman's vehicle in the location and at the time alleged on the ticket.  *Id*. at 19. Through Citation 1, the PPA imposed a fine of $76.00.  *Id*. at 17.  In a timely appeal to the Bureau, Mr. Fullman asserted that "a medical episode of dizziness [and] confusion" made it necessary to pull over and get out of his car in order to regain his composure.  *Id*. at 26.  Mr. Fullman further asserted that he has been assigned a handicapped parking placard for "serious medical illnesses" including diabetes, insomnia, and anxiety.  *Id*.  After Mr. Fullman explained the foregoing at the scene, however, the PPA agent instructed a tow truck operator to remove the vehicle, citing numerous previous violations.  *Id*.

On April 18, 2021, at 1:32 a.m., Mr. Fullman received another citation (Citation 2) from the PPA, in which he was charged with improperly parking in a designated handicapped space on the 800 block of Arch Street.  O.R. at 20-25.

---

proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. § 754(b).

[2] PHILA., PA. CODE, Title 12 (Traffic Code), *as amended*, added by ordinance effective May 6, 1958.  Section 12-903(1) provides that the "Department [of Streets] shall erect and maintain appropriate signs to give notice whenever an ordinance or regulation prohibits stopping, standing and parking on any street, or portion thereof, and no person shall stop, stand or park a vehicle in violation of such ordinances or regulations."  Traffic Code, § 12-903(1).

[3] Page numbers refer to the electronic pagination of the portable document format (PDF) version of the Original Record.

Attached to Citation 2 were two photographs of Mr. Fullman's vehicle; through the second photograph, it is apparent that no handicapped placard was hanging from the rearview mirror. *Id.* at 22-23. Through Citation 2, the PPA imposed a fine of $301.00. In a timely appeal, Mr. Fullman asserted that he does lawfully possess a handicapped parking placard but forgot to place it back on his rearview mirror after his caregiver, Jacob Witcher, took it down while driving. *Id.* at 29. Mr. Fullman further asserted that his medical conditions "cause [him] to forget things at times" and that he was therefore unaware of any issue until he heard a tow truck operator taking away his vehicle again. *Id.* Additionally, Mr. Fullman alleged that he had been waiting for a handicapped license plate since November 2020. *Id.* Attached to the Citation 2 appeal were a written statement by Mr. Witcher attesting to the above narrative and photocopies of the following: Mr. Fullman's commercial driver's license, a handicapped parking placard, an application for a handicapped license plate, and a photograph of an unspecific vehicle occupying an on-street parking space. *Id.* at 34-39.

In a single decision issued on May 17, 2021, the Bureau informed Mr. Fullman that a hearing examiner found "insufficient basis for dismissal" of the Citations. O.R. at 42. Thus, following a hearing examiner's review, the Bureau determined that Mr. Fullman owed $377.00, the sum of the fines for both Citations. *Id.* The Bureau also advised Mr. Fullman of his right to a hearing if he chose to appeal. *Id.* Mr. Fullman availed himself of that opportunity with a July 21, 2021 letter brief. *Id.* at 49. Regarding Citation 1, Mr. Fullman attributed his April 13, 2021 "episode of dizziness and confusion" to a wider range of ailments than he had previously alleged, including post-traumatic stress disorder, diabetes, anxiety, sleep insomnia, back, neck, shoulder, left ankle, and left knee injuries. *Id.* Regarding Citation 2, Mr.

3

Fullman reiterated his contention that Mr. Witcher had inadvertently left the handicapped parking placard down and that Mr. Fullman should not be liable for the failure to display it. *Id.* Mr. Fullman also noted that his handicapped license plate had finally arrived and expressed the hope that its placement on his vehicle would stop what he described as "ongoing harassment by the PPA." *Id.*

In an August 31, 2021 decision, the Bureau informed Mr. Fullman that an Appeal Panel reviewed the evidence he submitted and "found that there was insufficient basis on which to modify the original decision." O.R. at 53. The Bureau therefore informed Mr. Fullman that he still owed $377.00 for the Citations. *Id.* Additionally, the Bureau advised Mr. Fullman of his right to appeal to the trial court. *Id.*

On appeal to the trial court,[4] Mr. Fullman presented six arguments for consideration. *Id.* at 56. Namely, Mr. Fullman contended that the Bureau engaged in unlawful discrimination against him on the basis of his disabilities; that Mr. Fullman was being "targeted and harassed" by the Bureau; that the Bureau violated Mr. Fullman's constitutional rights, including the right to due process; that PPA officers also violated Mr. Fullman's constitutional rights when they failed to call for medical help as he suffered an alleged medical emergency; that Mr. Fullman had a right to question PPA officers during an in-person hearing; and that Mr. Fullman should not be liable for a parking ticket issued in the midst of a medical emergency. *Id.* at 56-57. Based on the foregoing, Mr. Fullman maintained that he had "submitted substantial evidence . . . that he is being harassed, targeted, and discriminated against." *Id.* at 57. Attached to the appeal brief were another copy of Mr. Witcher's written statement, another photograph of an unspecified vehicle in an on-street

---

[4] To supplement their briefs, the parties presented oral argument on the matter on June 16, 2022. *See* Fullman's Br., Appendix, Trial Ct. Op. at 5.

4

parking space, and several pages of information related to Mr. Fullman's medical history. *Id.* at 61-71.

In response, the Bureau asserted that Mr. Fullman had failed to demonstrate a violation of his constitutional rights, an error of law by the Bureau, a failure by the Bureau to comply with the Local Agency Law's procedural requirements, or that a finding of fact by the Bureau was unsupported by substantial evidence. *Id.* at 78 (citing 2 Pa.C.S. § 754(b)). The Bureau then contended that, rather than offering any such valid basis for overturning the Bureau's decision, Mr. Fullman was asking the trial court "for relief from the [Citations] on an equitable basis," which the trial court was not permitted to do. *Id.* at 79. Citing its "exclusive province over questions of credibility and evidentiary weight," the Bureau asked the trial court to deny the appeals. *Id.* (citing *Kocher's IGA v. Workers' Comp. Appeal Bd. (Dietrich))*, 729 A.2d 145 (Pa. Cmwlth. 1999)).

In its June 21, 2022 order, the trial court denied Mr. Fullman's appeal for lack of merit. *Id.* at 93. In an opinion issued subsequently, the trial court explained that the Bureau's conclusions were supported by substantial evidence, which notably included "exhibits of photographs[s] that had been taken contemporaneously" to the April 13, 2021 and April 18, 2021 incidents. Trial Ct. Op. at 4-5. By contrast, Mr. Fullman's "broadly asserted claims lack[ed] factual and legal merit." *Id*. at 7. The evidence that Mr. Fullman submitted in support of those claims actually "confirmed the accuracy of both . . . [C]itations," as they only served to confirm that Mr. Fullman had parked in the locations and at the times alleged by the Bureau. *Id.* Additionally, the trial court found that Mr. Fullman's explanation of a compelling medical reason for stopping on 15th Street on April 13, 2021, "stretched credulity and lacked any evidentiary support." *Id.*

This appeal followed.[5]

## II. Discussion

On appeal to this Court, Mr. Fullman presents 19 questions for our consideration, all of which, he proposes, should be answered in the affirmative:

1. Did the [trial] court err and abuse its authority when it denied [Mr. Fullman] a fair appeal hearing and due process?

2. Did the [trial] court err and abuse its authority in not considering whether [the Bureau] discriminated against [Mr. Fullman] because of his disabilities?

3. Did the [trial] court err and abuse its authority in not considering whether [Mr. Fullman] was targeted and harassed by Appellee?

4. Did the [trial] court err and abuse its authority in not considering whether [the Bureau] violated [Mr. Fullman's] constitutional rights and due process?

5. Did the [trial] court err and abuse its authority when it failed to consider whether [the Bureau] violated [Mr. Fullman's] constitutional rights and disability by failing and refusing to call for medical assistance while [Mr. Fullman] was having a medical emergency brought on by his medications, diabetes, dizziness, confusion, and heart condition diagnosed as orthostasis?

6. Did the [trial] court err and abuse its authority in not considering that [Mr. Fullman] should not be liable for a parking ticket during a medical emergency?

7. Did the [trial] court err and abuse its authority in not considering that Appellant's vehicle should not have been towed away while he was present and experiencing a medical emergency?

---

[5] Where the trial court does not take any additional evidence, our standard of review of a local agency's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 839 n.5 (Pa. Cmwlth. 2014).

8. Did the [trial] court err and abuse its authority in not considering or weighing the sworn statement from witness, [Mr.] Witcher[?]

9. Did the [trial] court err and abuse its authority in not considering that Appellant had a disability and was entitled to one free hour of parking under Section 1117(2)(a) of the Traffic Code . . . ?

10. Was the [trial] court bias[ed] in its statement to [Mr. Fullman] regarding his many parking tickets and stating that maybe he will stop getting so many parking tickets?

11. Was the [trial] court . . . in a rush and failed to give Appellant's case any time or consideration being informed of the merits of case and the continued harassment by Appellee?

12. Did the [trial] court err and abuse its authority in not allowing [Mr. Fullman] to argue his second ticket . . . regarding his medical emergency?

13. Was the [trial] court bias[ed], and did the [trial] court err and abused its authority in claiming to have seen the [the Bureau's] blurry photograph but did not see [Mr. Fullman's] clear photograph?

14. Did the [trial] court err and abuse its authority in not considering whether [Mr. Fullman] should be liable for a known faulty scanning device currently used by the [the Bureau] that continued to time his vehicle after he drove away from the area?

15. Did the [trial] court err and abuse its authority in not considering whether the parking tickets should have been administratively dismissed because [Mr. Fullman] had met his burden of proof under Section 754(b) of the Local Agency Law and Section (2)(a) of the Traffic Code?

16. Did the [trial] court err and abuse its authority in not considering whether [Mr. Fullman] was legally entitled to have the [Bureau] meter-maid present at the administrative hearing for questions?

17. Did the [trial] court err and abuse its authority in not considering a prior case photograph which the [trial court] clearly saw the [handicapped p]lacard hanging in the windshield on the sun visor[?]

7

18. Did the [trial] court err and abuse its authority in not considering that [the Bureau] saw the [handicapped p]lacard hanging in the windshield at the impound lot after [Mr. Fullman's] vehicle had already been towed[?]

19. Did the [trial] court err and abuse its authority in not considering that [the Bureau] had no meter maids working on 800 Arch Street, Philadelphia, when [Mr. Fullman's] car was wrongfully towed which supports him being targeted and harassed by [the Bureau]?

Fullman's Br. at 4-5.

Notwithstanding the wide range of the questions presented, the two-page argument section of Mr. Fullman's Brief is devoted primarily to a recitation of the factual averments that were rejected by the Bureau and/or the trial court: among them, that Mr. Fullman suffered a "medical emergency" on April 13, 2021, which necessitated pulling over on 15th Street for one hour, when Citation 1 was issued; that Mr. Fullman's handicapped placard was properly hanging from his rearview mirror in the early morning of April 18, 2021, when Citation 2 was issued; that Mr. Fullman's vehicle was, for some reason, unfairly "targeted"; that an unnamed PPA agent admitted to Mr. Fullman that the handicapped placard was, in fact, on display; and that Mr. Witcher has personally witnessed behavior by PPA agents unfairly targeting and harassing Mr. Fullman. *Id.* at 9. In light of the foregoing, Mr. Fullman maintains that he "has submitted substantial evidence that a reasonable mind might accept as adequate to support a conclusion that he is being harassed, targeted, and discriminated against." Fullman's Br. at 10.

Mr. Fullman's arguments are lacking in merit. Our role as an appellate court is not to "find facts or reweigh the evidence." *A.P. v. Dep't of Pub. Welfare*, 98 A.3d 736, 743 (Pa. Cmwlth. 2014). Rather, it is the trier of fact who, while passing on the credibility of the weight of the evidence, "is free to believe all, part, or none of the

evidence." *Commonwealth v. Salinas*, 307 A.3d 790, 793 (Pa. Super. 2023). We further note that, even if it were true that Mr. Fullman had presented substantial evidence below, it would be irrelevant to his actual evidentiary burden. This Court has observed that "substantial evidence" is "an appellate standard of review and not a standard of evidence applied by a fact finder to determinations of whether a burden of proof has been satisfied." *Samuel J. Lansberry, Inc. v. Pa. Pub. Util. Comm'n*, 578 A.2d 600, 602 (Pa. Cmwlth. 1990); *see also Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz)*, 114 A.3d 27, 34 (Pa. Cmwlth. 2015) (explaining that substantial evidence "is not a quantum of proof necessary to persuade a fact-finder"). By merely parroting the factual allegations that he had made to the Bureau, Mr. Fullman gives us no legitimate basis for overturning its or the trial court's conclusions.

To the extent that Mr. Fullman's Argument section contains legal argument rather than rehashed factual averments, we observe that those arguments consist of little more than bald assertions without support in the record. First, Mr. Fullman maintains that he is entitled to one hour of free parking under Section 1117(2)(a) of the Traffic Code. As the trial court explained, however, Mr. Fullman was required to display his handicapped placard prominently in order to obtain the hour of free parking. Second, Mr. Fullman maintains that the Bureau violated his constitutional rights by denying his request to cross-examine the PPA agents who wrote the Citations; yet, there is no evidence in the record that Mr. Fullman made such a request until the matter reached the trial court, whose role—like our own—was not to find facts but to review the Bureau's findings for substantial evidence. *See Johnson v. Lansdale Borough*, 146 A.3d 696, 710-11 (Pa. 2016). Third, Mr. Fullman maintains that the PPA agents violated his constitutional rights "by not calling or

9

offering any medical assistance when [Mr. Fullman] reported his medical emergency and symptoms," Fullman's Br. at 10; yet, Mr. Fullman fails to identify any provision in the United States or Pennsylvania Constitutions that such conduct, if proven, would have allegedly violated.

## III. Conclusion

For the foregoing reasons, we affirm the trial court.

<br>

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Fullman, :
          Appellant :
  :
  :
      v. : No. 650 C.D. 2022
  :
Bureau of Administrative :
Adjudication :

# **O R D E R**

AND NOW, this 23rd day of April 2026, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated June 21, 2022, is hereby AFFIRMED.

 

                        _____

                        MATTHEW S. WOLF, Judge