IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caitlin Quigley, : 
               Petitioner : 
                : 
           v. : No. 1449 C.D. 2017
                : Argued: March 13, 2019
Unemployment Compensation : 
Board of Review, : 
             Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION BY
PRESIDENT JUDGE LEAVITT[1]                   FILED: January 28, 2020

Caitlin Quigley (Claimant) petitions this Court for review of an adjudication of the Unemployment Compensation Board of Review (Board) holding her ineligible for unemployment benefits under Section 402(h) of the Unemployment Compensation Law (Law).[2]  In doing so, the Board reversed the eligibility determination of the Unemployment Compensation (UC) Service Center and the Referee. They held that Claimant's sideline business activity did not render her ineligible for benefits but directed that the income from this activity be deducted from her unemployment benefits.  Because she disagreed with the amount of the deduction from her benefits, Claimant appealed. The Referee reduced the deduction.  The Board

---

[1] This matter was assigned to the authoring judge on September 19, 2019.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h) (relating to self-employment).

then reversed the Referee, holding that Claimant did not prove her self-employment was a sideline activity and, thus, she was ineligible for benefits in any amount.

The issue before this Court is whether in an administrative appeal under the Law, the Board or the Referee is authorized to revise, *sua sponte*, the scope of a claimant's appeal to address an issue not raised by the separating employer, the claimant or the Department of Labor and Industry (Department). After review, we vacate and remand.

## Background

Claimant filed an application for unemployment compensation benefits, wherein she reported that she was laid off from her full-time employment with the Philadelphia Area Cooperative Alliance (Employer). As part of that application, Claimant reported income of $11,874 from her sideline business, which she supported with a copy of her prior year's federal income tax return. The UC Service Center determined that Claimant was eligible for benefits under Section 402(h) of the Law,[3] which allows employees who have lost their full-time employment to collect

---

[3] Individuals who are self-employed are generally ineligible for unemployment compensation benefits. Section 402(h) contains an exception for a sideline business. It states:

An employe shall be ineligible for compensation for any week—

* * *

(h) In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work *when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with respect to such activity shall be deemed remuneration* paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. §802(h) (emphasis added).

unemployment benefits notwithstanding their income from sideline work. However, the income expected from the sideline business must be deducted from the employee's unemployment benefits. The UC Service Center deducted $237.00 per week from Claimant's benefits to account for her sideline activity.[4]

Claimant believed that the UC Service Center erred because it based the deduction on her previous calendar year earnings rather than her anticipated earnings in the current calendar year. On that basis, Claimant appealed, and the Referee scheduled a hearing for May 9, 2017. Claimant requested a continuance, but it was denied. The hearing, at which Claimant did not appear, proceeded as scheduled. The Referee specifically noted and placed into the record the above-referenced documents in the Department's file on Claimant's application. On May 11, 2017, the Referee affirmed the UC Service Center's determination but modified the deduction for her sideline business income from $237.00 to $228.34 per week. Claimant appealed to the Board, again challenging only the calculation of her sideline business income and the corresponding deduction from her weekly benefit payment.

On review, the Board, *sua sponte*, reversed the Referee. It held that Claimant was ineligible for benefits in any amount because she did not present

---

[4] It is apparent the UC Service Center applied Section 65.121 of the Department's regulations, 34 Pa. Code §65.121, to calculate Claimant's deduction by using her gross income from her sideline business, rather than her net earnings. This Court recently declared Section 65.121 to be unreasonable and that, for purposes of calculating "net earnings" for a sideline business, the Department must deduct all of a claimant's business expenses from her gross revenue. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 552 (Pa. Cmwlth. 2018). This Court decided *Lerch* on March 12, 2018. Because Claimant specifically challenged how her deduction was calculated, this matter must be remanded to the Board, on this basis alone, to recalculate Claimant's deduction in accordance with *Lerch*. *See Smith v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 850 C.D. 2017, filed March 21, 2018), slip op. at 6 ("[B]ecause the Department calculated [the c]laimant's deductible using an unauthorized, unreasonable regulation, this Court remands the matter to the [Board] to recalculate [the c]laimant's deductible in accordance with *Lerch*.").

3

evidence at the Referee hearing that she qualified for the sideline business exception in Section 402(h) of the Law. Claimant requested reconsideration of the Board's decision and a remand hearing to establish good cause for not attending the Referee hearing. On September 5, 2017, the Board denied Claimant's reconsideration request without explanation. Claimant petitioned for this Court's review.[5]

> In her petition for review, Claimant stated, *inter alia*, as follows:
>
> When I did not attend the hearing, the UC Board of Review determined that I was ineligible for benefits. I do not believe this to be a fair decision, as *the hearing was not about eligibility but was about benefit amount*.

Petition for Review at 3 (emphasis added). Likewise, in her brief to this Court, Claimant argued: "The purpose of the hearing was to determine benefit amount, not to determine benefit eligibility or sideline business exception eligibility, therefore the UC Board of Review erred in reversing eligibility for benefits by stating that the burden of proof for the sideline business exception had not been met." Claimant Brief at 13-14. The Board responded in its brief that "[b]ecause Claimant appealed the Department's determination, the issue of whether Claimant's business qualified as a sideline business was required to be addressed by the tribunal. Therefore, it was not error for the Board to decide Claimant's eligibility under Section 402(h) of the Law." Board Brief at 7 (citations omitted).

---

[5] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704." *Turgeon v. Unemployment Compensation Board of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

Recognizing that Claimant had raised an issue of the Board's authority to change the scope of her appeal,[6] this Court entered an order on August 20, 2018, directing the parties to file supplemental briefs to address the following issue:

> In an administrative appeal under the [Law], is the Referee or the Unemployment Compensation Board of Review authorized to change, *sua sponte*, the scope of a claimant's appeal to address an issue not raised by the separating employer or the claimant?

The matter was listed for oral argument, which was heard on March 13, 2019. The matter is now ready for disposition.[7]

## Appeal

Claimant acknowledges that the regulations of the Department grant the Board *de novo* review of a Referee's decision. She argues, however, that the Board lacks the authority to change the nature of a claimant's appeal when it has not given the parties notice and an opportunity to be heard on the revised appeal issue. Here, the Board did not notify Claimant that eligibility was an issue, which violated her

---

[6] The dissenting opinions claim that Claimant did not raise the issue of the Board's authority to change the scope of her appeal. Claimant's petition for review and brief both state that the Board "erred" and rendered a decision that was not "fair" because the only purpose of her appeal was to determine the amount of her benefit, not her eligibility. Claimant's statements express a challenge to the Board's authority to change the scope of her appeal. It was not necessary for Claimant to use magic words such as "authority" and "*sua sponte*" in order for this Court to review the important due process and jurisdictional issues presented by this case. We reject the restrictive view of Claimant's papers asserted by the dissents.

The authority of the Board to change the scope of a claimant's appeal raises a jurisdictional issue. Jurisdiction relates to a tribunal's "very power to adjudicate a controversy." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017). "Power to adjudicate" also may be expressed as "the competency of the particular court or administrative body to determine" a controversy. *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 182 A.2d 682, 686 (Pa. 1962). Here, the question is whether the Board has the competency, or power, to adjudicate a controversy not presented to it by any party.

[7] On August 13, 2018, Philadelphia Legal Assistance Attorney Julia Simon-Mishel entered her appearance on Claimant's behalf. Prior to that time, Claimant acted *pro se*.

fundamental right to due process. At each stage of her appeal, Claimant questioned only the calculation of the deduction for her sideline business income, not the UC Service Center's determination that she was eligible for benefits under Section 402(h). She was not informed that an appeal of her benefit calculation would place her eligibility for benefits at risk.

The Board rejoins that the Department's regulations require it to consider all issues ruled upon by the UC Service Center and the Referee. Every claimant is imputed with knowledge of those regulations because they were promulgated in accordance with the law. As such, a party to an unemployment proceeding cannot claim to be surprised when the Board decides to address an issue not raised by the claimant, the employer or the Department, so long as it is an issue subsumed in the UC Service Center's determination.

**Analysis**

We begin with a review of the applicable law. It is the General Assembly's stated intention that the Law will provide workers unemployed through no fault of their own with some measure of economic security. Section 3 of the Law states as follows:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and

6

indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of [the Law] for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. §752. Our Supreme Court has specifically identified the Law as a "remedial" statute that warrants a liberal construction, as do the procedural rules that govern unemployment compensation proceedings. *See Miller v. Unemployment Compensation Board of Review*, 476 A.2d 364, 366 (Pa. 1984) ("[W]e have long refused to give overly technical, restrictive readings to procedural rules, particularly when remedial statutes such as the Unemployment Compensation [Law] are involved.").

The Department has adopted procedural rules to govern unemployment compensation appeals. One regulation states, in relevant part, as follows:

> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider *the issues expressly ruled upon in the decision from which the appeal was filed*. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa. Code §101.87 (emphasis added). A different regulation covers the appeal of the decision of the "tribunal," or referee, and states:

> (a) In connection with the consideration of an appeal to the Board from the decision of a referee, the Board may consider an issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal

7

proceedings. *However, issues not previously considered or raised will not be considered by the Board*, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

(b) *The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed.* However, any issue in the case, with the approval of the parties, may be determined though not expressly ruled upon or indicated in the notice of hearing, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

34 Pa. Code §101.107 (emphasis added).

The Law expressly authorizes the Department to promulgate regulations. Section 201(a) of the Law states, in relevant part, that the Department "shall have power and authority to adopt, amend, and rescind such regulations[.]… Such rules and regulations shall not be inconsistent with the provisions of this act." 43 P.S. §761. Section 201(a) of the Law conforms to the bedrock principle of administrative law that an agency's regulation must conform to the statute under which the regulation is promulgated. *George A. Fuller Co., Inc. v. City of Pittsburgh*, 327 A.2d 191, 194 (Pa. Cmwlth. 1974) ("[T]he power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute.") (citation omitted). Indeed, Section 201(2) of the act commonly known as the Commonwealth Documents Law requires every agency to identify the statutory authority for its promulgation of a regulation. 45 P.S. §1201(2).[8] *See also Xerox Corp. v. City of Pittsburgh*, 327 A.2d 206, 210 (Pa. Cmwlth. 1974) ("[R]egulations

---

[8] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1201(2).

8

promulgated by an administrative agency pursuant to statutory directive are invalid where contrary to the legislative intent expressed in the statutory provision to which the regulation relates.").

With these principles in mind, we turn to the instant appeal.

## I.

The Department's regulations provide for a broad review by the Board. 34 Pa. Code §§101.87, 101.107. The Board argues that it is not limited to the discrete issue raised by a claimant and this has been confirmed in precedent. However, that precedent is distinguishable from the case at bar in one crucial way: the claimants were each aggrieved by the tribunal's decision on eligibility.

For example, in *Jordan v. Unemployment Compensation Board of Review*, 547 A.2d 811 (Pa. Cmwlth. 1988), the claimant was discharged for starting a sideline business that his employer considered to be in direct competition with the employer's business. The UC Service Center agreed and held that the claimant's establishment of a sideline business constituted willful misconduct, which rendered him ineligible under Section 402(e). It also found that the claimant's self-employment rendered him ineligible under Section 402(h). The claimant appealed. Upon receipt of evidence, the referee issued a decision holding the claimant eligible under Section 402(e) but ineligible under Section 402(h). In his appeal to the Board, the claimant stated that he was appealing the referee's denial of benefits under Section 402(h) but not the referee's ruling in his favor under Section 402(e). Nevertheless, the Board reviewed both of the referee's eligibility determinations and reversed both. The Board held the claimant was eligible under Section 402(h), but ineligible under Section 402(e). The claimant appealed to this Court. Citing Section 101.107(b) of the Department's regulation, this Court concluded that, "while claimant did not want the Board to review the issue of whether he was ineligible for benefits under Section 402(e), that issue was expressly ruled upon in the referee's decision

9

from which the present appeal was filed. Consequently, the Board had jurisdiction to rule on it." *Jordan*, 547 A.2d at 813.

*Jordan* is distinguishable. Notwithstanding which subsection of Section 402 was dispositive, at all times the issue in the proceeding was the claimant's eligibility for unemployment. Eligibility was the issue squarely before the Board.[9]

By contrast, here, Claimant's eligibility was never in dispute. Both the UC Service Center and the Referee held that she was eligible for unemployment benefits because her self-employment was limited to a sideline activity. Employer did not contest her eligibility, and neither did the Department. Rather than decide the controversy presented, which pertained to benefit calculation, the Board transformed the nature of the controversy to one of benefit eligibility. This was problematic because there was in fact no controversy over Claimant's eligibility. Consequently, Claimant had no notice that the Board would review her eligibility, because it had not been contested by Employer or by the Department.[10] Although the regulation at 34 Pa. Code §101.87 authorizes a tribunal to consider all "issues expressly ruled upon"

_____

[9] The cases cited by the Board in its brief are similarly distinguishable because the claimants in those cases were aggrieved by the tribunal's decision on eligibility at all stages of the proceedings. *See*, *e.g.*, *Thiessen v. Unemployment Compensation Board of Review*, 178 A.3d 255 (Pa. Cmwlth. 2018); *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338 (Pa. Cmwlth. 2008); *Black Lick Trucking, Inc. v. Unemployment Compensation Board of Review*, 667 A.2d 454 (Pa. Cmwlth. 1995); *Cassidy v. Unemployment Compensation Board of Review*, 532 A.2d 524 (Pa. Cmwlth. 1987); and *Department of Labor & Industry, Bureau of Employment Security v. Unemployment Compensation Board of Review*, 201 A.2d 310 (Pa. Super. 1964).

[10] In her dissent, Judge Cohn Jubelirer posits that Claimant's appeal of the calculation of her benefit amount necessarily raised the question of her eligibility because the Section 402(h) analysis considers a claimant's self-employment income for purposes of determining both eligibility and the rate of compensation. Conflating the two inquiries in the abstract does not change the fact that neither of the potentially adverse parties, *i.e.*, Employer or the Department, contested Claimant's eligibility. Claimant raised nothing more than a computational error in her appeals to the Referee and the Board.

below, the appeal process must still comport with due process. Thus, there must be a controversy between at least two of the parties at every stage of the appeal.

Further, the Board gave an "overly technical, restrictive reading[]" to the procedural rules in 34 Pa. Code §101.107(b), which is not appropriate where a remedial statute such as the Law is involved. *Miller*, 476 A.2d at 366. Effectively, the Board dismissed Claimant's appeal because of her nonappearance at the Referee hearing. However, this Court has held that a claimant's appeal should not be dismissed for nonappearance. *See Gadsden v. Unemployment Compensation Board of Review*, 479 A.2d 74, 76 (Pa. Cmwlth. 1984) ("The referee then dismissed the claimant's appeal because of her nonappearance. We believe that this was error."). Here, consistent with *Gadsden*, the Referee decided the merits of Claimant's appeal of her benefit amount, albeit still not correctly in the belief of Claimant.

Claimant did not receive due process.[11] The Referee denied Claimant a continuance and decided her appeal on the basis of the Department's records. The Board reversed because Claimant did not appear at the Referee hearing to prove her eligibility, and then the Board refused to give Claimant an opportunity to explain her nonappearance. Fundamental due process requires notice and an opportunity to be heard, and this constitutional principle must inform the Department's procedural rules for unemployment compensation appeals.

Our Supreme Court has instructed that "remedial legislation must always be interpreted so that the benefit sections are liberally and broadly construed to

---

[11] "It is well settled that the essential elements of due process in an administrative proceeding are notice and opportunity to be heard." *Groch v. Unemployment Compensation Board of Review*, 472 A.2d 286, 287-88 (Pa. Cmwlth. 1984). *See also Wojciechowski v. Unemployment Compensation Board of Review*, 407 A.2d 142, 143 (Pa. Cmwlth. 1979). The due process violation is even more egregious here because Claimant had intended to present evidence before the Referee, but her continuance request was denied. The Board also denied her request for reconsideration of its adjudication with no explanation.

11

alleviate the distress of the involuntarily unemployed." *Cugini v. Unemployment Compensation Board of Review*, 512 A.2d 1169, 1173 (Pa. 1986). In this case, the Board violated this precept. It used the Department's procedural rules as a "gotcha" to deprive Claimant of the benefits to which she was entitled. Regardless, the Department's regulation, if intended to give the Board this authority, must conform to law, and this includes the constitutional guarantees of due process.[12] Our holding is limited to the circumstances presented in the case *sub judice*, *i.e.*, where the claimant, through no fault of her own, becomes unemployed; where the claimant is found to be eligible for unemployment benefits and no party challenges her eligibility; and where, on review of the claimant's appeal of the computation of her unemployment benefit amount, the Board *sua sponte* raises the issue of her eligibility for benefits.[13]

## II.

Claimant also argues that the Board applied the Department regulations in a way that improperly commingled the Department's prosecutorial and adjudicatory functions. This violates due process as our Supreme Court established in *Lyness v. State Board of Medicine*, 605 A.2d 1204, 1209-10 (Pa. 1992).

Most unemployment compensation cases involve an employer and a claimant. *See*, *e.g.*, *County of Allegheny/Fifth Judicial District of Pennsylvania v. Unemployment Compensation Board of Review*, 210 A.3d 1140 (Pa. Cmwlth. 2019) (dispute between claimant and his employer over whether his impaired driving

---

[12] See U.S. CONST. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); PA. CONST. art. I, §1 (among inherent rights of all citizens "are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness); §11 ("[E]very man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[.]").

[13] Our holding applies equally to a case where the referee *sua sponte* revisits the UC Service Center's determination that the claimant is eligible for benefits and does not allow the claimant to present evidence.

conviction was work-related). However, the Department is a silent party in every unemployment compensation case by virtue of Section 502 of the Law, which states that whenever a notice of determination is appealed, the Board, through its referees, must "afford[] the parties *and the [D]epartment* reasonable opportunity for a fair hearing[.]" 43 P.S. §822 (emphasis added). The statute also requires that the "parties and their attorneys or other representatives of record and *the [D]epartment* shall be duly notified of the time and place of a referee's hearing and of the referee's decision[.]" *Id.* (emphasis added). Following a decision by the referee or the Board, "the claimant, *the Department* or an affected employer" each has the right to appeal. 34 Pa. Code §101.90 (emphasis added). Thus, the Department, which issues the original notice of determination on benefits, can participate in a hearing on an appeal of that determination. Indeed, the Department appeals Board decisions where it disagrees with the Board's application of the Law. *See, e.g.*, *Department of Labor and Industry v. Unemployment Compensation Board of Review*, 131 A.3d 597 (Pa. Cmwlth. 2016) (appeal by the Department contesting the Board's application of "good cause" for job search registration cases).

In the case at bar, the UC Service Center determined that Claimant was entitled to benefits under Section 402(h) of the Law, subject to a weekly deduction for her sideline business income. Claimant appealed, challenging only the monetary amount of the deduction. Indeed, Claimant could not have appealed the issue of her eligibility for benefits under the sideline business provision of Section 402(h) of the Law because she was not aggrieved by that determination. The only portion of the UC Service Center determination, and later Referee decision, that Claimant could have appealed was the amount of prorated earnings that determined her weekly deduction.

The Referee held a *de novo* hearing, in which the Department could have participated. It did not. Similarly, if the Department had an issue with the Referee's

13

decision to affirm the UC Service Center's eligibility determination, it could have appealed to the Board. It did not. The Board reversed Claimant's eligibility even though that issue could not have been raised by Claimant, but only by the Department or Employer. By doing so, the Board put itself in the role of the adversary, and in the case of self-employment, within the prosecutorial role of the Department. Such commingling of prosecutorial and adjudicatory functions is improper.

The Pennsylvania Supreme Court has explained that "[t]here is a strong notion under Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen." *Lyness*, 605 A.2d at 1207. The statutory design of the unemployment compensation appeal system does not commingle the functions of prosecution and adjudication.[14] It is the Board's application of the Department's procedural rules in 34 Pa. Code §101.107 that is the problem. The Board's application threatens the "walls of division [] constructed [to] eliminate the threat or appearance of bias." *Lyness,* 605 A.2d at 1209. Such walls are necessary because "the overlap of

---

[14] The Supreme Court explained in *Lyness* that a single administrative agency can perform the function of prosecution and the function of adjudication:

> [I]n the modern world of sprawling governmental entities akin to corporations it would be both unrealistic and counterproductive to insist that administrative agencies be forbidden from handling both prosecutorial and adjudicatory functions, where such roles are parcelled out and divided among distinct departments or boards. Efficiency and cost-effectiveness are certainly desirable ends. *Indeed, each administrative board and judge is ultimately a subdivision of a single entity*, the Commonwealth of Pennsylvania, but this does not render their collective work as prosecutors, investigators and adjudicators constitutionally infirm, nor create an imminent threat of prejudice.

*Lyness*, 605 A.2d at 1209 (citation omitted) (emphasis added). However, the functions of prosecution and adjudication may not be commingled in one "subdivision" or "distinct" board. When the Board addresses the determination of eligibility, when it was not appealed by any party, it no longer acts as a "distinct" board. Rather, it takes on the role of the prosecutorial arm of the Department.

prosecutorial and adjudicatory functions, even where not complete, [is] anathema to the notion of due process in Pennsylvania, where citizens rightly presume that the same individual does not wear the mantel of zealous prosecutor and impartial judge." *Id.* at 1208.

The "prosecutorial" actor in all unemployment compensation matters is the Department, and it may challenge any determination on eligibility for benefits. Although it is the employer that typically opposes a claimant's eligibility, we cannot just ignore the Department's statutory prosecutorial role, as do the dissenting judges. The Board's function is solely adjudicatory. It must not take on the Department's prosecutorial function by revisiting the referee's holding on benefit eligibility unless the Department raises that challenge. "[A] mere possibility of bias under Pennsylvania law is sufficient to raise the red flag of protection offered by the procedural guaranty of due process." *Id.* The appearance of bias is even stronger given that the Department has promulgated a regulation authorizing the Board to re-adjudicate a referee decision even if no interested party has appealed:

> Upon application to the Board (petition for further appeal to the Board), or on its own motion, the Board may review an appeal which has been decided by a referee. Notice of the removal of a case to the Board shall be mailed to the last known post office address of each interested party.

34 Pa. Code §101.101.

In sum, by enlarging the scope of Claimant's appeal to include her eligibility for unemployment compensation, the Board impermissibly commingled the functions of prosecution and adjudication. The principles of *Lyness* are grounded in constitutional principles of due process. As such, they cannot be set aside or compromised by a regulation of the Department, as suggested by the Board and agreed to by the dissents.

15

## Conclusion

Claimant, through no fault of her own, became unemployed; was ruled eligible for unemployment benefits; and no party challenged her eligibility. On review, the Board *sua sponte* raised the eligibility issue and prevented Claimant from presenting evidence. Simply, the Board denied Claimant a fair hearing. Further, the Board erred by assuming the prosecutorial role of the Department when it raised the issue of Claimant's eligibility for benefits and held that she was ineligible. In commingling the prosecutorial and adjudicatory functions, the Board created an appearance of impropriety and bias. The Board's actions have contravened the remedial purpose of the Law, due process and fundamental fairness.

For these reasons, we vacate the Board's order and remand the matter to the Board to remand to a referee to conduct a hearing to determine whether the deduction from Claimant's weekly benefit amount for her sideline business income was properly calculated.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caitlin Quigley,                                   :
                         Petitioner                :
                                                   :
              v.                                   :      No. 1449 C.D. 2017
                                                   :
Unemployment Compensation                          :
Board of Review,                                   :
                         Respondent                :

# **O R D E R**

AND NOW, this 28th day of January, 2020, the order of the Unemployment Compensation Board of Review (Board) in the above-captioned matter dated August 8, 2017, is VACATED, and the matter is REMANDED to the Board to remand to a referee for further proceedings consistent with the Court's opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caitlin Quigley,                      :

               Petitioner     :

                      :

          v.           :   No. 1449 C.D. 2017

                      :   Argued:  March 13, 2019

Unemployment Compensation   :

Board of Review,           :

             Respondent   :

**BEFORE:**    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                 **HONORABLE RENÉE COHN JUBELIRER,** Judge
                 **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                 **HONORABLE ANNE E. COVEY,** Judge
                 **HONORABLE MICHAEL H. WOJCIK,** Judge
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                 **HONORABLE ELLEN CEISLER,** Judge

**DISSENTING OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: January 28, 2020**

Appeals involving the denial of benefits under the Unemployment Compensation Law (Law)[1] implicate the financial security of individuals. Therefore, the Court is frequently faced with sympathetic claimants for whom the denial of unemployment compensation (UC) benefits is undoubtedly a hardship. However, this Court's review of such matters must be consistent with the Law, the Department of Labor and Industry's (Department) regulations, and precedent. Because I fear that the Majority has examined this matter sympathetically rather than legally, as reflected in its deviation from the Law, the regulations, and longstanding

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751 – 919.10.

precedent, I must dissent for the reasons that follow. In addition, I join the well written dissent of my colleague, Judge Michael H. Wojcik.

Respectfully, I disagree with the Majority's conclusion that the Unemployment Compensation Board of Review (Board) exceeded its authority when it considered whether Caitlin Quigley (Claimant) met her burden of proving that her self-employment was a sideline business activity. The Majority holds that the Board lacks the authority "to revise, *sua sponte*, the scope of a claimant's appeal to address an issue not raised by the separating employer, the claimant or the Department." *Quigley v. Unemployment Comp. Bd. of Review*, __ A.3d __, __ (Pa. Cmwlth., No. 1449 C.D. 2017, filed Jan. 28, 2020), slip op. at 2. However, in reaching this conclusion, as well as in finding a due process violation, the Majority errs by characterizing the Board's actions as being *sua sponte* and by discounting the broad review provided to the Board under the Law, the regulations, and precedent.[2] Further, because I view the Board as acting within its express authority, I must also disagree with the Majority's determination that the Board engaged in an unconstitutional commingling of the Department's prosecutorial and adjudicative functions as prohibited by *Lyness v. State Board of Medicine*, 605 A.2d 1204, 1209-10 (Pa. 1992).

---

[2] I also question whether the issue addressed by the Majority, the authority of the Board to "change, *sua sponte*, the scope of a claimant's appeal to address an issue not raised by the separating employer [or] the claimant," is properly before the Court. *Quigley*, __ A.3d at __, slip op. at 2. I do not read Claimant's Petition for Review as generously as the Majority does, and, therefore, I do not believe Claimant raised this issue until the parties were directed to file supplemental briefs on the issue by order of the Court dated August 20, 2018. Further, I disagree with the Majority's characterization of the issue addressed here as being jurisdictional in nature and, therefore, subject to *sua sponte* consideration. I believe the question raised by Claimant is more appropriately considered an issue of the scope of the Board's review of a referee's determination, which for the reasons set forth in this opinion, is very broad and not subject to the curtailment proposed by the Majority. Accordingly, I continue to disagree with the Majority addressing an issue that I believe was not raised by Claimant and that is not jurisdictional in nature.

## I.    Guiding Legal Principles

The Majority begins with a review of the purpose of the Law, which I agree informs our analysis in this matter.  Section 3 of the Law states as follows:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance.  Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.  The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency.  The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752.  This is a laudable public policy set forth by the General Assembly in the Law, which is remedial in nature and must be liberally construed.  *Chamberlain v. Unemployment Comp. Bd. of Review*, 114 A.3d 385, 395 (Pa. 2015).  However, these are not the only principles that should guide the Court in its review of this matter.

For example, notwithstanding that the Law is remedial in nature, its liberal construction may not, in "the pretext of pursuing its spirit," disregard the Law's clear and unambiguous language.  Section 1921(a), (b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a), (b); *see Kirsch v. Pub. Sch. Emps. Ret. Bd.*, 985 A.2d 671, 676 (Pa. 2009) (providing that although a remedial statute "should be construed

liberally in favor of [the claimant], such construction cannot violate the plain, unambiguous language of the [statute] itself"). Further, despite recognizing that "[e]conomic insecurity due to unemployment is a serious menace" that can impose the "burden of indigency . . . on the unemployed worker," 43 P.S. § 752, the General Assembly did not authorize the wholesale grant of UC benefits to all those who become unemployed. It placed **restrictions** on the eligibility for such benefits, acknowledging, necessarily, that the fund from which those benefits are paid is **not infinite**. *See Dep't of Labor and Indus. v. Unemployment Comp. Bd. of Review*, 211 A.2d 463, 469 (Pa. 1965) (*Lybarger*) ("The life of the system literally depends on the existence of a fund out of which those payments can be made. Quite obviously, the fund can not remain healthy and viable if sums are" removed not in accordance with the Law.). Thus, in addition to excluding those who are unemployed due to their own fault, whether by voluntarily quitting without cause of a necessitous, compelling nature or engaging in willful misconduct connected with their work, the General Assembly excluded those who are **engaged in self-employment**. *See* Section 402(b), (e), and (h) of the Law, 43 P.S. § 802(b), (e), (h). It has long been held that the Law is not intended to protect those who are engaged in business for themselves or who are failed entrepreneurs. *Owoc v. Unemployment Comp. Bd. of Review*, 809 A.2d 441, 443 (Pa. Cmwlth. 2002); *Kapera v. Unemployment Comp. Bd. of Review*, 116 A.2d 238, 239 (Pa. Super. 1955). Although there is an exception to this exclusion, the sideline business exception, which is at issue here, that exception requires the claimant to establish that the sideline business was not the claimant's primary livelihood.

In light of these principles, the General Assembly directs the Board to act as the final arbiter within the UC administrative process. Although the Department,

through a local service center, and a Referee may make decisions, which may become final if not appealed, if such decisions are appealed to the Board it is the **Board** that serves as the ultimate fact finder. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Per Section 504 of the Law, the Board, in performing its duties, has the obligation "on appeal . . . **[to] review any claim** . . . **decided by[] a [R]eferee**, and" is authorized to "affirm, modify, or reverse the determination . . . of the [D]epartment or [R]eferee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence." 43 P.S. § 824 (emphasis added). Consistent with Section 504, the regulations reflect that issues decided by either the Department or a Referee are subject to the Board's ultimate review. Section 101.87 of the regulations reflects that "[w]hen an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim." 34 Pa. Code § 101.87. In an appeal from that decision, the appellate "tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed." *Id.* Thus, when an appeal is taken, the appellate "tribunal," whether a Referee or the Board, is **required** to consider or review "the **issues expressly ruled upon** in the decision." *Id.* (emphasis added). Section 101.107(b) of the regulations similarly requires that "[t]he Board **shall consider the issues expressly ruled upon in the decision** from which the appeal was filed." 34 Pa. Code § 101.107(b) (emphasis added). While this regulation allows the Board, with the approval of the parties, to expand its review to those issues "not expressly ruled upon or indicated in the notice of hearing,"[3] nothing in the regulations indicate that the Board's **obligation to**

---

[3] Notably, subsection (a) of this regulation allows the Board to consider issues that are not expressly ruled upon and not previously raised "if the speedy administration of justice, without

RCJ-5

**review those issues expressly ruled upon** is subject to the approval of the parties. 43 P.S. § 824; 34 Pa. Code §§ 101.87, 101.107(b).

The Court should also be guided by the long established principle that, in addition to the Board's fact finding role set forth in Section 504 and the regulations, the Board "has a duty to protect the [UC] fund from ineligible claimants and to investigate all the facts in a given case." *Perminter v. Unemployment Comp. Bd. of Review*, 426 A.2d 245, 247 (Pa. Cmwlth. 1981); *see also Lybarger*, 211 A.2d at 469; *DiGiovanni v. Unemployment Comp. Bd. of Review*, 404 A.2d 449, 450 (Pa. Cmwlth. 1979). Since at least 1943, Pennsylvania courts have recognized the obligation of the Commonwealth and the UC authorities to avoid dissipation of the fund by those not entitled to benefits. *See Lybarger*, 211 A.2d at 467-70; *Amspacher v. Unemployment Comp. Bd. of Review*, 479 A.2d 688, 691 (Pa. Cmwlth. 1984); *Phillips v. Unemployment Comp. Bd. of Review*, 30 A.2d 718, 723 (Pa. Super. 1943). The fund "must be used only in accordance with its statutorily stated purpose." *Lybarger*, 211 A.2d at 469. And, the Board's duty is independent of the obligation of any of the parties to meet their respective burdens of proof. *Perminter*, 426 A.2d at 247.

Finally, the Court should be guided by the principle that courts regularly impute knowledge of the law and of regulations on parties, whether represented or not. *See, e.g.*, *Green v. Harmony House N. 15th St. Hous. Ass'n, Inc.*, 684 A.2d 1112, 1114 (Pa. Cmwlth. 1996) (charging pro se litigant with knowledge of the Pennsylvania Rules of Civil Procedure); *Del Borello v. Dep't of Pub. Welfare*, 508 A.2d 368, 371 (Pa. Cmwlth. 1986) (charging a health care provider with knowledge of relevant regulations); *County of Lehigh v. Lerner*, 475 A.2d 1357, 1359 (Pa.

---

prejudice to any party, will be substantially served thereby and are supported by the record." 34 Pa. Code § 101.107(a).

Cmwlth. 1984) (stating it is an ancient legal maxim that everyone is presumed to know the law). Moreover, "[p]ossible ignorance of the law does not excuse" a party's actions or lack thereof that may result in the injury to the party's cause. *Finney v. Unemployment Comp. Bd. of Review*, 472 A.2d 752, 753-54 (Pa. Cmwlth. 1984). Those parties choosing to proceed without counsel "assume the risk that [a] lack of expertise and legal training will prove [to be their] undoing." *Groch v. Unemployment Comp. Bd. of Review*, 472 A.2d 286, 288 (Pa. Cmwlth. 1984).

Because I believe these principles must be **consistently applied** in **all cases**, and the Majority does not do so here, I must disagree with the Majority.

## II. The Authority of the Board

The Majority concludes that the Board, acting *sua sponte*, exceeded its authority because the Board addressed an issue not raised in Claimant's appeal, or by her separating employer or the Department. Because Claimant was not aggrieved by the eligibility determination, and no other entity challenged that determination by filing a separate appeal, the Majority holds that this issue was beyond the Board's consideration. I believe it errs in reaching these conclusions.

First, the Majority accepts Claimant's argument that because she only challenged the amount of her UC benefits, the issue of Claimant's eligibility under the sideline business exception was not implicated. However, Claimant's appeal **squarely placed** her eligibility for benefits under that exception **before the Board**. This is because a determination regarding the rate of compensation in self-employment cases by its very nature encompasses the question of eligibility for those benefits under Section 402(h) of the Law. Section 402(h) provides that an employee is ineligible for benefits if the employee engages in self-employment. 43 P.S. § 802(h). The exception to this ineligibility, also found in Section 402(h), is the

sideline business exception – which is the exception **Claimant** relies upon to claim she is not ineligible for UC benefits. To qualify for this exception, Claimant had to establish that: (1) the self-employment began prior to the termination of the full-time employment; (2) the self-employment continued without substantial change after the employee's termination; (3) the employee remained available for full-time employment; and "(4) **the self-employment was not the primary source of [her] livelihood**." *Kress v. Unemployment Comp. Bd. of Review*, 23 A.3d 632, 636 (Pa. Cmwlth. 2011) (emphasis added). Under this standard, the Section 402(h) inquiry considers a claimant's self-employment **income** for purposes of **both** eligibility (that it was not the primary source of the claimant's livelihood) and the weekly rate of compensation (by how much the claimant's UC benefits should be reduced) should the exception be established. Therefore, an appeal as to the rate of compensation, which requires a review of the claimant's self-employment income, necessarily implicates questions of eligibility and vice versa. An appeal as to one is an appeal to both.

This is reflected in Claimant's reasoning for appealing to the Board. Claimant explained that:

> You are calculating my benefits on my 2016 sideline business earnings, but I expect my 2017 sideline business earnings to be approximately $3,100 for the year, which is significantly lower than the amount shown on my 2016 Schedule C, which showed $11,784 in income. **This is because I was paid as a 1099 contractor for my <u>full-time</u> work with the Philadelphia Area Cooperative Alliance between January 1 and March 31, 2016, and then was converted to a W2 employee on April 1, 2016**. My sideline business only has one client . . . and I anticipated approximately $3,100 in my earnings for 2017. Please calculate my reduction based on the $3,100 number and not the $11,784 number.

(Notice of Appeal, May 17, 2017 (emphasis added).) Claimant contested the calculation of her benefits by explaining the **source** of her sideline business earnings in 2016, a matter affecting **eligibility** under Section 402(h). By raising on appeal to the Board a dispute as to her sideline business earnings, and explaining that the higher amount of her sideline business earnings utilized by the Referee was incorrect because it included 1099 contractor wages for her **full-time work**, Claimant necessarily **raised the question of her eligibility**. Regardless of what part of the Referee's Decision Claimant wanted to challenge, and what she wanted to remain unchallenged, Claimant put her self-employment, and thus her eligibility, at issue in this notice of appeal. Thus, I disagree with the Majority's characterization of the Board's actions as being *sua sponte*.

Second, and more importantly in my view, the Board was **required** to review the question of Claimant's eligibility under the Law, the regulations, and longstanding precedent because that issue had been ruled upon by both the local service center and the Referee. The Referee specifically held that Claimant was **"NOT DISQUALIFIED** from receiving compensation under [Section 402(h)]." (Referee Order (emphasis in the original).) As discussed, under Section 504 of the Law **the Board** is the **ultimate fact finder** that determines a claimant's eligibility for benefits **based on its *de novo* review**. Per that section, "[t]he [B]oard **shall have power** . . . on appeal . . . [to] review **any claim** . . . **decided by[] a [R]eferee** . . . ." 43 P.S. § 824 (all emphasis added). The Department's regulations similarly reflect that issues **expressly ruled upon** by either a local service center or a Referee are subject to the Board's ultimate review. Since 1981, this Court has consistently held that these provisions give the Board jurisdiction to consider **any** issue expressly ruled upon in the determination being appealed even though the appealing party "did

**not intend** to reopen the inquiry into . . . issue[s that] had been resolved in [the party's] favor." *Lenz v. Unemployment Comp. Bd. of Review*, 432 A.2d 1149, 1150 (Pa. Cmwlth. 1981) (emphasis added); *see also Peacock v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1735 C.D. 2018, filed Aug. 21, 2019), slip op. at 6-7;[4] *Mazur v. Unemployment Comp. Bd. of Review*, 193 A.3d 1132 (Pa. Cmwlth. 2018); *Ductmate*, 949 A.2d at 343; *Black Lick Trucking, Inc. v. Unemployment Comp. Bd. of Review*, 667 A.2d 454, 457 (Pa. Cmwlth. 1995); *Jordan v. Unemployment Comp. Bd. of Review*, 547 A.2d 811, 813 (Pa. Cmwlth. 1988); *Wilder & Miller, P.C. v. Unemployment Comp. Bd. of Review*, 525 A.2d 852, 855 (Pa. Cmwlth. 1987). In *Black Lick Trucking*, we explained that these provisions "mean that whatever issues the [local service] center addressed the [R]eferee should likewise address, and the Board in turn should decide all of the issues the [R]eferee considered, regardless of whether a party specifically raised the issue on appeal." 667 A.2d at 457.

The Majority deviates from this longstanding precedent and the broad authority of the Board under the Law and the regulations by limiting their application only to cases where the claimant had been aggrieved by the eligibility determination. Under the Majority's reasoning, only those issues that were expressly ruled upon in the determination being appealed **and** by which the appealing party was aggrieved can be reviewed by the Board. However, I am wholly unconvinced that the plain language obligating the Board to consider "**any claim** . . . **decided by[] a [R]eferee,**" 43 P.S. § 824 (emphasis added), or any "**issues expressly ruled upon**," 34 Pa. Code §§ 101.87, 101.107(b) (emphasis added), and the longstanding precedent

---

[4] Unreported opinions of this Court may be cited for their persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

interpreting that language broadly, can be limited in the manner suggested by the Majority. From this language, it is apparent that the General Assembly intended the Board to serve the role of final arbiter of **all** claims upon which the Department and Referee expressly ruled. Such role is consistent with the Board's duty to protect the fund from improper claims, which is independent of the parties' obligations to meet their respective burdens of proof in a particular UC case. *Perminter*, 426 A.2d at 247; *see also Lybarger*, 211 A.2d at 469; *DiGiovanni*, 404 A.2d at 450. To allow the parties to limit the level of review expressly set forth in the Law and the regulations, as proposed by the Majority, would hinder the ability of the Board, and other UC authorities, to carry out their obligation to prevent the utilization of the fund for purposes other than it was intended, thereby "jeopardiz[ing the fund's] solvency and destroy[ing the fund's] trust characteristics," which "must not be permitted." *Lybarger*, 211 A.2d at 470.

The Majority's rationale is based, at least in part, on its conclusion that "Claimant's eligibility was **never** in dispute" because both the local "[s]ervice [c]enter and the Referee **held that she was eligible for [UC] benefits** because her self-employment was limited to a sideline activity." *Quigley*, __ A.3d at __, slip op. at 10 (emphasis added). But, before Claimant could receive benefits, there had to be a determination as to her eligibility and it was **her burden** to prove that her "activity is non-disqualifying under Section 402(h)." *Kress*, 23 A.3d at 636. As **Claimant** bore the burden of proving that her sideline business activity was not disqualifying, the fact that neither Claimant's separating employer nor the Department challenged that eligibility is of no moment. The local service center and Referee were required to **expressly rule** on Claimant's eligibility, and those rulings fall plainly within the Board's broad review. Accordingly, I do not view this as a

reason for this Court to break with the plain language of the Law and the regulations, or with longstanding precedent.

## III. Due Process

The Majority also concludes Claimant's due process rights were violated because she did not have an opportunity to be heard on her eligibility. The Majority's rationale here is two-fold. First, the Referee improperly denied Claimant's continuance request; and second, the Board effectively dismissed Claimant's appeal based on an over technical, restrictive reading of its regulations. Citing, again, the principle of liberal construction of the Law, the Majority holds that the Board used its regulations "as a 'gotcha' to deprive Claimant of the benefits to which she was entitled." *Quigley*, __ A.3d at __, slip op. at 12. Because I view the Board's compliance with the Law and the regulations as not some form of "gotcha" and as being consistent with the principles of due process, I must disagree with the Majority's conclusions.

First, the Majority takes issue with the Referee's denial of Claimant's request for a continuance, as such denial, it concludes, prevented her from presenting evidence beyond that in the Department's records. Fundamental due process requires notice and an opportunity to be heard. *Thomas v. Unemployment Comp. Bd. of Review*, 543 A.2d 600, 602 (Pa. Cmwlth. 1988). Under Section 101.51 of the regulations, "[i]f a party notified of the date, hour and place of a hearing fails to attend **without proper cause**, the hearing may be held in [the party's] absence." 34 Pa. Code § 101.51 (emphasis added). Parties need only be afforded the **opportunity** to be heard, and the "failure to avail [oneself] of that opportunity before [a] [R]eferee is no cause for any remedial action on [that party's] behalf." *Groch*, 472 A.2d at 288. When neither party appears before the tribunal, the Referee and the Board may

RCJ-12

make a decision on the merits based on the available records. 34 Pa. Code § 101.51; *Clairton Mun. Auth. v. Unemployment Comp. Bd. of Review*, 639 A.2d 921, 923 (Pa. Cmwlth. 1994).

Following Claimant's appeal from the initial determination, a hearing before the Referee was scheduled for May 9, 2017. The Notice of Hearing set forth the specific issue to be considered as "#18 – Section 402(h) – Whether Claimant is engaged in self-employment." (Certified Record (C.R.) Item No. 5.) Notably, this hearing notice reflected that the broad issue to be considered was whether Claimant "engaged in self-employment," (*id.*), rather than the narrower issue Claimant contends was before the Referee. On April 30, 2017, Claimant requested, via email, a continuance of the hearing until after May 25, 2017, but **did not explain why** she was unable to attend the scheduled hearing. Per Section 101.23(a) of the regulations, a "[c]ontinuance of a hearing will be granted **only for proper cause** and upon the terms as the tribunal may consider proper." 34 Pa. Code § 101.23(a) (emphasis added). To obtain a continuance, a party **must** provide a **specific reason** for the request that would qualify as proper cause. *See Liebel v. Unemployment Comp. Bd. of Review*, 558 A.2d 579, 581 (Pa. Cmwlth. 1989) (holding there was no abuse of discretion in denying a continuance request where the reason given was vague in nature and, therefore, could not demonstrate that proper cause existed). Further, while Claimant indicated in her request that email was the "best way" to contact her, she did not state it was the **only** way to contact her. (Claimant's Brief at App. 1, Request for Hearing Continuance.) Despite **not** hearing about her emailed continuance request in the nine days between the request and the scheduled hearing, Claimant did **not** contact that office to inquire about the status of her request – she simply did not appear. *Zellman v. Unemployment Comp. Bd. of Review* (Pa.

Cmwlth., No. 1588 C.D. 2007, filed Jan. 31, 2008) (denying *nunc pro tunc* relief to a claimant who did not follow up with the local service center regarding the status of the claimant's appeal); *McClean v. Unemployment Comp. Bd. of Review*, 908 A.2d 956, 959 (Pa. Cmwlth. 2006) (holding that claimant's counsel should have attempted to follow up on an email appeal to ensure that it was filed before the requisite deadline). Because Claimant did not provide a reason for her continuance request and did not follow up on that request when she did not receive a response, her non-participation in the hearing was, unfortunately, due to her own negligence. Regrettably, "[h]er failure to avail herself of th[e] opportunity [to be heard] before the referee is no cause for any remedial action on her behalf." *Groch*, 472 A.2d at 288.

Second, the Majority finds a due process violation because "the Board gave an 'overly technical, restrictive reading[]' to [its] procedural rules," which should be liberally construed, and used those rules as a "gotcha" to deprive Claimant her UC benefits. *Quigley*, __ A.3d at __, slip op. at 11-12. However, the Board did not read the regulations in an overly technical and restrictive way or with some nefarious intent of depriving Claimant of her benefits. Rather, consistent with the **plain language** of Section 504 and the regulations, the Board fulfilled its **obligation** to review the issues expressly ruled upon in the Referee's Decision, which included that Claimant was **"NOT DISQUALIFIED** from receiving compensation under [Section 402(h)]." (Referee Order (emphasis in original).) While the Majority repeatedly relies on the remedial nature of the Law to justify its departure from the Law, the regulations, and precedent, the principle of liberal construction may not be used to disregard the Law's clear and unambiguous language under "the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b); *Kirsch*, 985 A.2d at 676. Here, Claimant

had notice of the issues being reviewed and an opportunity to be heard of which she did not avail herself. Thus, I would not find a due process violation under these circumstances.[5]

## IV. *Lyness*

Finally, I must disagree with the Majority's conclusion that the Board impermissibly took on a prosecutorial function when it issued this Order. This conclusion is premised upon the Majority's finding that the Board *sua sponte* changed the scope of Claimant's appeal. For the reasons previously discussed, I disagree that the Board acted *sua sponte* or changed the scope of the appeal. I also, therefore, disagree that for Claimant's eligibility to be an issue for the Board's consideration, either the Department or Claimant's separating employer had to appeal the Referee's Decision as posited by the Majority.

While we must remain vigilant to protect against "the overlap of prosecutorial and adjudicatory functions," under these circumstances, I do not believe the Board's inquiry was impermissible. *Lyness*, 605 A.2d at 1208. In this case, not only was the issue of eligibility for benefits at issue before the Referee, and inextricably intertwined with the issue of Claimant's sideline earnings, Claimant herself raised the issue in her appeal to the Board. Moreover, because Claimant did not act with due diligence, she missed the opportunity at the Referee's hearing to more fully develop the basis for her eligibility.

---

[5] The Board did not state that its opinion was based upon the available records, and concluded that Claimant "concede[d] that she owned and operated an independent business, but failed to present competent evidence for the . . . [Board] to conclude that she fit into the sideline activity exception because she failed to appear at the hearing in this matter." (Board Order.) To the extent that the Board did not articulate that its decision was based on the pertinent available records, this Court could remand on this issue alone for the Board to make a decision based upon such records, as we did in *Clairton Municipal Authority*, 639 A.2d at 923.

This Court recently addressed *Lyness* within the framework established for reviewing UC claims. *Powell v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1418 C.D. 2017, filed Feb. 1, 2019), slip op. at 10-12. In finding no violation of due process under *Lyness*, the Court explained that "neither the referees nor the Board function[] as prosecutors, . . . no prosecution or disciplinary action occurred[, and] . . . no member of the Board had any involvement in the decision-making regarding the merits of [the c]laimant's claim at any stage prior to the appeal to the Board." *Id.* at 12. I find this analysis equally applicable in the present matter. Because I would conclude that the Board did not act *sua sponte* or exceed its scope of review when it addressed the issue of Claimant's eligibility, there was no appearance of bias or impropriety in its consideration of Claimant's eligibility. *See Lyness*, 605 A.2d at 1208.

## V. Conclusion

In reviewing UC matters, the Court must be cognizant that, notwithstanding the sympathetic nature of any particular situation or any particular claimant, its role is to determine whether the Board correctly applied the law to factual findings that are supported by substantial evidence without violating any parties' constitutional rights. *Bertram v. Unemployment Comp. Bd. of Review*, 206 A.3d 79, 83 n.6 (Pa. Cmwlth. 2019). Further, the Court must remain faithful to its obligation to effectuate the intent of the General Assembly and that, where "the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(a), (b). To do otherwise may cause harm to the Law as it applies to all of the Commonwealth's citizens and employers, not just to one sympathetic claimant. Because it appears the Majority has allowed the

RCJ-16

sympathetic nature of this matter to override the Court's obligation to remain consistent with the Law, the regulations, and longstanding precedent, I must dissent.

                                    _____

                                    **RENÉE COHN JUBELIRER,** Judge

Judge Wojcik joins this dissent.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caitlin Quigley,                          :
                                          :
                    Petitioner            :
                                          :
          v.                              : No. 1449 C.D. 2017
                                          : Argued: March 13, 2019
Unemployment Compensation                 :
Board of Review,                          :
                                          :
                    Respondent            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                           FILED:  January 28, 2020


          Respectfully, I dissent.  I join in the dissenting opinion of Judge Cohn Jubelirer, and I write separately to highlight the following concerns.

          First, our Supreme Court has repeatedly admonished that an appellate court exceeds its scope of review by raising an issue *sua sponte*. *Johnson v. Lansdale Borough*, 146 A.3d 696, 709 (Pa. 2016) ("It is well-established that where the parties in a case fail to preserve an issue for appeal, an appellate court may not address that issue *sua sponte*."); *Wiegand v. Wiegand*, 337 A.2d 256, 257 (Pa. 1975) ("*sua sponte* determinations raise many of the considerations that led this Court to require without exception that issues be properly preserved for appellate review . . . .").

In Caitlin Quigley's (Claimant) uncounseled Petition for Review, she alleged that the result was not "a fair decision," because "the hearing was not about eligibility but was about benefits amount." Petition for Review p. 3. Claimant asserted it was not "fair that [she] should be made ineligible for missing a hearing [that she] tried to get continued and for which [she] was not adequately notified." *Id.* Nowhere in the Petition for Review did Claimant even vaguely reference the Unemployment Compensation Board of Review's (Board) authority. Notwithstanding the Majority's expansive interpretation, Claimant's indistinct contention that the decision was "not fair" cannot reasonably be construed as a challenge to the Board's prerogative. In her initial *pro se* brief, Claimant argued that she had, in fact, met her burden of proof on the issue of eligibility prior to the hearing and the Board erred in concluding otherwise. She also complained that the denial of a continuance denied her an opportunity "to offer an argument in this case." Claimant's January 18, 2018 brief at 13. Claimant presented no cognizable legal argument and she cited no authority to support her contentions.

Whether the Board exceeds its authority, or otherwise errs, this Court may not correct such error unless the issue is raised by the parties. The Majority holds that the Board exceeded its authority by *sua sponte* addressing the issue of Claimant's eligibility, but the Majority could not reach *that* conclusion without first taking the extraordinary step of facilitating representation for Claimant and, thereafter, by directing the parties to file supplemental briefs addressing an additional issue. I submit that the Court exceeds its authority by deciding issues *sua sponte*. *See Johnson*, 146 A.3d at 709 (cautioning that courts "may not inject new theories into appellate proceedings by merely directing the parties to brief a

MHW - 2

particular issue.").[1] The Majority violates what should be an unassailable principle of appellate jurisprudence, and its disposition suggests that our scope of review varies with the perceived importance of an issue.

Furthermore, the Majority's fundamental premise, that Claimant was not informed that the appeal of her benefit *calculation* placed her *eligibility* at issue, is belied by the record: Claimant was notified that the issue of her eligibility was to be considered at the referee's hearing. Certified Record (C.R.) Item No. 5. *The Majority's analysis renders this notice irrelevant.*

Claimant chose not to attend the hearing, and she provided no reason to support her request for a continuance. C.R. Item No. 6. The Board's regulation allows continuance of a hearing only for proper cause. 34 Pa. Code §101.23(a). The Majority's conclusion that the denial of Claimant's unexplained continuance request compounds an "egregious" denial of due process is simply confounding.[2] Given the

---

[1] Notably, the two issues decided today, relating to the Board's authority and the alleged commingling of prosecutorial and adjudicatory functions, were neither suggested by nor significantly related to the issues raised by Claimant in her *pro se* appeal. *Compare Johnson*, 146 A.3d at 709 ("the inquiry posed by the court was directly related to disposition of the appeal before it").

[2] *Quigley v. Unemployment Compensation Board of Review*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1449 C.D. 2017, filed January 28, 2020), slip op. at 11 n.9.

In a similarly perplexing fashion, the Majority supports its conclusion that Claimant was denied due process by complaining that the Board denied her request for reconsideration without explanation. To determine whether good cause exists for the grant of reconsideration, the Board must consider whether the party requesting reconsideration has presented new evidence or changed circumstances or whether the Board failed to consider relevant law. *Williams v. Unemployment Compensation Board of Review*, 125 A.3d 875, 876-77 (Pa. Cmwlth. 2015). Claimant does not address this issue on appeal, and the Majority does not explain how the denial of reconsideration implicated Claimant's right to due process.

MHW - 3

record, I believe the Majority's conclusion that Claimant was denied due process is at odds with both the facts and the law.[3]

The Majority's decision suggests that this Court will review all *pro se* appeals with an eye toward ensuring that an appellant's lack of sophistication does not compel an unfortunate result, in which case this Court will fashion a remedy. In zealously endeavoring to correct a perceived violation of due process, the Majority overlooks the *equal protection* concerns raised by its analysis. Indeed, the Majority's analysis begs the question: would the Court find that a counseled claimant, who likewise chose to visit family instead of attending a hearing, and who offered no reason to support a continuance request, was "prevented . . . from presenting evidence [and] denied . . . a fair hearing"? *Quigley v. Unemployment Compensation Board of Review*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1449 C.D. 2017, filed January 28, 2020), slip op. at 15.

In that regard, this Court has issued *countless* decisions explaining that a layperson who chooses to represent herself in a legal proceeding must assume the risk that her lack of expertise and legal training may prove to be her undoing. *See, e.g.*, *Arena Beverage Corp. v. Pennsylvania Liquor Control Board*, 97 A.3d 444, 452 (Pa. Cmwlth. 2014); *Stugart v. Unemployment Compensation Board of Review*, 85 A.3d 606, 609 (Pa. Cmwlth. 2014); *Fraisar v. Gillis*, 892 A.2d 74, 77 n.4 (Pa. Cmwlth. 2006); *Barber v. Philadelphia Tax Review Board*, 850 A.2d 866, 868 (Pa. Cmwlth. 2004); *Griffith v. Workers' Compensation Appeal Board (New Holland*

---

[3] Claimant bore the burden to prove she qualified for the sideline business exception to the disqualifying provisions of section 402(h) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h) (relating to self-employment). The hearing notice specifically identified the issue to be considered at the hearing as whether Claimant was engaged in self-employment. Nevertheless, the referee decided that issue *without addressing the criteria* for the sideline business exception or the impact of Claimant's absence from the hearing.

*North America, Inc.*), 798 A.2d 324, 328 (Pa. Cmwlth. 2002); *Groch v. Unemployment Compensation Board of Review*, 472 A.2d 286, 288 (Pa. Cmwlth. 1984).

In *Groch*, the claimant appealed from a decision of the Board affirming a referee's denial of benefits. The claimant, who until then had proceeded *pro se*, did not challenge the merits of the Board's decision but argued that the Board infringed upon her due process rights by failing to advise her of her right to request oral argument and to file a brief. We explained:

> That [the claimant] did not pursue her appeal in the fashion most desirable to her is unfortunate, but any layperson choosing to represent [herself] in a legal proceeding must, to some reasonable extent, assume the risk that [her] lack of expertise and legal training will prove [her] undoing. [The claimant] was afforded the required *opportunity* to be heard throughout this proceeding. Her failure to avail herself of that opportunity before the referee is no cause for any remedial action on her behalf . . . .

472 A.2d at 288 (emphasis in original).

Initially, Claimant also proceeded without benefit of counsel. In doing so, Claimant took the risk that her lack of expertise would undermine her efforts. *Groch*. Claimant believed that the documents she submitted with her benefits application were sufficient to establish her eligibility. Claimant intended her appeal to raise only one issue, *i.e.*, her request to calculate her pro-rated weekly deductible based on anticipated income, rather than past income, from her sideline business. After receiving notice of the May 9, 2017 hearing, Claimant decided to visit family instead of attending it, a choice that the Majority completely disregards. Claimant expected that her April 30, 2017 request for a continuance, albeit unexplained, would

be considered, if not granted. Claimant anticipated that her advising of "the best way to contact [her]" would be understood as the only way to reach her.

Had Claimant been represented during that time, she might have made different choices. However, the consequences of Claimant's choices are not for this Court to remedy. *Groch*, 472 A.2d at 288.

As presented by the parties, this is a straightforward case. Claimant was notified of the issues to be considered at the referee's hearing. Because Claimant did not attend the hearing, she failed to establish eligibility for benefits. That consequence did not result from a denial of due process. Indeed, the referee erred in determining Claimant's eligibility without considering the relevant criteria and the absence of record evidence. The Board did not. Our Court errs and exceeds its scope of appellate review by injecting *new* issues into this appeal. *Johnson*, 146 A.3d at 709.[4]

For all of the foregoing reasons, I join in Judge Cohn Jubelirer's dissent and would affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

Judge Cohn Jubelirer joins in this dissent.

---

[4] *See also Michael G. Lutz Lodge No. 5 v. City of Philadelphia*, 129 A.3d 1221, 1225 n.4 (Pa. 2015) ("The distinction between authority and jurisdiction is subtle but important."), and *Riedel v. Human Relations Commission*, 739 A.2d 121, 124 (Pa. 1999) (jurisdiction and authority to act are not interchangeable and Commonwealth Court erred in *sua sponte* addressing the agency's authority to act).